[No. 37764-7-I.   Division One.   February 17, 1998.]

AUBURN MECHANICAL, INC., *Plaintiff*, v. LYDIG CONSTRUCTION, INC., *Defendant*, BOEING COMMERCIAL AIRPLANE GROUP, *Respondent*, PILCHUCK MECHANICAL, INC., *Appellant*.

*Catherine Wright Smith* and *Howard M. Goodfriend* of *Edwards Sieh, Smith & Goodfriend*, for appellant.

*Roger A. Myklebust* and *Kandice G. Tezak* of *Ryan, Swanson & Cleveland*, for respondent.

ELLINGTON, J. — Pilchuck Mechanical, Inc. undertook to perform excavation work on a Boeing project.[1] Alleging that the job bore little resemblance to the project that was bid, Pilchuck brought a claim against Boeing for breach of an "implied-in-law duty" and asserted a right "to recover under the theory of quantum meruit/unjust enrichment for the amount that it deserves, a reasonable amount for work performed."

---

[1]Other parties reflected in the caption are not involved in this appeal.

The sole question presented on appeal is whether the trial court erred in striking Pilchuck's jury demand. Since Pilchuck's claims were legal, not equitable, denial of a jury trial was error.

## Procedure

Pilchuck Mechanical, Inc. performed work under a subcontract with Ellis-Don Construction, Inc., the general contractor on a fuel dock construction project at Boeing's plant in Everett. Pilchuck notified Boeing and Ellis-Don that extra work was required to complete the job.

Pilchuck filed a claim of lien against Boeing's property for labor and materials supplied on the project, then sought foreclosure of the lien and recovery of money due for work performed outside the contract, in the amount of $900,000. Ellis-Don also sued Boeing, in part for moneys due under the contract. Ellis-Don assigned the contract claim to Pilchuck before trial, and was no longer a party at the time of trial. Boeing asserted that the work was performed under the contract. Pilchuck filed a jury demand.

The trial court granted Boeing's motion to strike Pilchuck's request for a jury trial. Pilchuck then voluntarily dismissed its claim for foreclosure of its lien, and again requested a trial by jury. Concluding Pilchuck's claims were primarily equitable, the trial court denied the request. Discretionary review in this court and in the Supreme Court was denied.

Following trial, the court awarded judgment to Pilchuck on contract claims, dismissed Pilchuck's claims for unjust enrichment and recovery in quantum meruit, and dismissed Boeing's counterclaim. Pilchuck appeals, claiming the trial court erred by denying its request for a jury trial.

## Discussion

■ The Washington Constitution in article I, section 21, provides that "the right to a jury trial shall remain

inviolate."[2] This right has been "jealously guarded by the courts."[3] In a landmark decision under the seventh amendment,[4] the United States Supreme Court confirmed the centrality of the right to trial by jury: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."[5]

The basic rule in interpreting article I, section 21 of the Washington Constitution is to look to the right as it existed at the time the constitution was adopted in 1889.[6] We look both to the scope of the right and the nature of the action to which it applies.[7] Thus, our constitution has been held to guarantee a right to a jury trial where the civil action is purely legal in nature, but not where the action is purely equitable in nature.[8]

Washington follows the historical test in determining whether claims sound in equity or at law. Thus, we look to

---

[2]Wash. Const. art. I, § 21; *see also* CR 38(a).

[3]*Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 710, 116 P.2d 315 (1941).

[4]The Seventh Amendment does not apply to the states in civil trials. Thus we look only to our own constitution. *See Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 644, 771 P.2d 711, 780 P.2d 260 (1989).

[5]*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501, 79 S. Ct 948, 3 L. Ed. 2d 988 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S. Ct. 296, 79 L. Ed. 603 (1935)).

[6]The literature on this subject is voluminous. For criticism of the historical approach in the context of the federal constitution, see, e.g., 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2ND § 2302 (1995); Kenneth S. Klein, *The Myth of How to Interpret the Seventh Amendment Right to a Civil Jury Trial*, 53 OHIO ST. L.J. 1005, 1028 (1992) ("Asking how 1791 England would deal with a 1991 multi-district patent infringement case is a little like asking how the War of the Roses would have turned out if both sides had airplanes."); Rachael E. Schwartz, *Everything Depends On How You Draw The Lines: An Alternative Interpretation Of The Seventh Amendment*, 6 SETON HALL CONST L.J. 599, 614 (1996). *See also, Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 574, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990) (Brennan, J. concurring).

[7]*Sofie*, 112 Wn.2d at 645.

[8]*Knudsen v. Patton*, 26 Wn. App. 134, 137, 611 P.2d 1354, *review denied*, 94 Wn.2d 1008 (1980). *See* Philip A. Trautman, *Right to Jury Trial in Washington—Present and Future*, 34 WASH. L. REV. 401, 406 (1959).

see whether the claims in question were within the exclusive jurisdiction of the equity courts when the state constitution was adopted in 1889.[9]

Where an action is neither purely legal nor purely equitable in nature, the trial court must determine whether it is primarily legal or equitable in nature, and has wide discretion in this exercise.[10] Any doubt should be resolved in favor of a jury trial, in deference to the constitutional nature of the right.[11] For the purpose of determining the primary character of an action, our courts have set forth several factors to be considered:

> Such discretion should be exercised with reference to many factors including, but not necessarily limited to the following: (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.[12]

It is thus apparent that the preliminary task is to determine whether the various claims are equitable or legal, for if all the claims are legal, the "primary" character

---

[9]*See Sofie*, 112 Wn.2d at 645; *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980); *In re Marriage of Firchau*, 88 Wn.2d 109, 114, 558 P.2d 194 (1977); *Cox v. Charles Wright Academy, Inc.*, 70 Wn.2d 173, 176, 422 P.2d 515 (1967); *S.P.C.S., Inc. v. Lockheed Shipbuilding & Constr. Co.*, 29 Wn. App. 930, 933, 631 P.2d 999, *review denied*, 96 Wn.2d 1019 (1981).

[10]*See Brown*, 94 Wn.2d at 366-68.

[11]*S.P.C.S.*, 29 Wn. App. at 934.

[12]*Scavenius v. Manchester Port Dist.*, 2 Wn. App. 126, 129-30, 467 P.2d 372 (1970) (approved and adopted in *Brown*, 94 Wn.2d at 368).

of an action is not in question and the right to a jury trial is clear.

■ The distinction between legal and equitable claims is based on the nature of the action, not the form of the action.[13] The court must examine the pleadings on file at the time the court rules on the motion to strike the jury demand,[14] and " 'should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.' "[15] More importantly, courts must examine the remedy sought.[16]

■ The gist of Pilchuck's claim was that it incurred additional costs because Boeing mismanaged the project, failed to disclose jobsite conditions, and failed to provide a complete set of plans, all of which was outside Pilchuck's contemplation when it submitted its bid and executed the subcontract. This is commonly referred to as a claim for extra work. For this claim Pilchuck sought money damages.

The subcontract between Pilchuck and Ellis-Don incorporated the prime contract between Ellis-Don and Boeing Commercial Airplane Group. The prime contract provided that if extra work were requested and performed, the parties were to amend the contract to incorporate such extra work. Although Pilchuck notified both Ellis-Don and Boeing that extra work was being required and that further information would be submitted, the contract was never amended. Pilchuck therefore asserted Boeing's liability not under an express term of the contract, but rather on

---

[13]*S.P.C.S.*, 29 Wn. App. at 934.

[14]*Waagen v. Gerde*, 36 Wn.2d 563, 571, 219 P.2d 595 (1950); *S.P.C.S.*, 29 Wn. App. at 934.

[15]*Brown*, 94 Wn.2d at 368 (quoting *Scavenius*, 2 Wn. App. at 129-30).

[16]*Chauffeurs*, 494 U.S. at 565. *See also* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 2.6(3), at 156 (2d ed. 1993): "[O]verwhelmingly, courts characterize claims according to the remedies sought rather than according to subject matter or substantive rules involved."

"implied-in-law" principles.[17] Pilchuck's claim against Boeing contained the following allegations:

12. The Boeing Company had an implied-in-law duty to Pilchuck and was unjustly enriched by Pilchuck's furnishing of labor, materials, equipment and services, for which The Boeing Company has not paid.

13. The Boeing Company requested that such labor, materials, equipment and services be supplied, and Pilchuck's providing of the same has enriched The Boeing Company to the extent that The Boeing Company has not paid for such work.

14. Consequently, Pilchuck is entitled to recover under the theory of quantum meruit/unjust enrichment for the amount that it deserves, a reasonable amount for work performed.

15. Pilchuck is entitled to recover against The Boeing Company for the reasonable value of the labor, materials, equipment and services provided, of which, at the present time, the sum of $900,000 remains due and owing, together with interest accrued, together with costs and attorneys' fees.

The situation giving rise to the dispute between Pilchuck and Boeing is common: a contractor refuses to pay for extra work allegedly performed by a subcontractor. The modern term for this type of action is restitution. Restitution is not exclusive to equity.

"For a long time restitution developed more or less independently at law and in equity."[18] Early forms of the modern action included quasi contract, in which the court posited a constructive agreement in order to make a contract remedy available in the absence of a real contract. Quasi contract developed out of the common-law writ of assumpsit, and included subordinate counts such as a count for work and labor done, otherwise known as quantum me-

---

[17]Boeing argues that Pilchuck did not advance an "implied in law" theory below. We reject this contention. Pilchuck asserted an "implied in law duty." "A quasi contract or a contract implied in law . . . arises from an implied legal duty or obligation." *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P.2d 681 (1989).

[18]GEORGE E. PALMER, THE LAW OF RESTITUTION § 1.1, at 3 (1978). See also 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 4.1(3) (2d ed. 1993).

ruit.[19] In an action in a law court, a plaintiff prevailing in a suit in quasi contract was given a money judgment.[20]

The equity courts also developed remedies for claims for the value of extra work, including the constructive trust and the equitable lien.[21] The link that connects such claims (or remedies) as quantum meruit and constructive trust "is the idea of unjust enrichment."[22] But in the law courts, and in modern actions for quantum meruit, the remedy is that sought by Pilchuck—money damages:

> The conduct of one or more parties to an express contract may be such that performance is removed from the confines of the express contract. In such cases, it is proper for the court to assess damages on the basis of quantum meruit measured by the costs incurred by the performing party to complete the job and a reasonable allowance for profit.[23]

As the court stated in *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*:[24] "A claim for unjust enrichment is a quasi-contractual claim. Quantum meruit—'a reasonable amount for the work done'—is the measure of recovery."

■ Money damages is exactly the remedy juries traditionally determine. As the *Sofie* court noted, the measure of damages is squarely within the jury's fact-finding province.[25] And money damages is the only remedy sought

---

[19]*See* 1 Dan B. Dobbs, Dobbs Law of Remedies § 4.2(3), at 581-84 (2d ed. 1993); George E. Palmer, The Law of Restitution §§ 1.1-1.2 (1978).

[20]*See* George E. Palmer, The Law of Restitution § 1.1, at 3 (1978).

[21]George E. Palmer, The Law of Restitution § 1.1, at 3; (1978); 1 Dan B. Dobbs, Dobbs Law of Remedies § 2.6(3), at 157, § 4.3 (2d ed. 1993).

[22]George E. Palmer, The Law of Restitution § 1.1, at 4 (1978).

[23]*Modern Builders, Inc. v. Manke*, 27 Wn. App. 86, 93, 615 P.2d 1332, *review denied*, 94 Wn.2d 1023 (1980) (citing *V.C. Edwards Contracting Co., Inc. v. Port of Tacoma*, 83 Wn.2d 7, 13, 514 P.2d 1381 (1973)).

[24]33 Wn. App. 190, 195, 653 P.2d 1331 (1982) (citations omitted).

[25]*Sofie*, 112 Wn.2d at 645.

here.[26] Pilchuck does not appeal to the court's equitable power to issue a coercive order, such as an injunction or decree of specific performance. Pilchuck does not seek rescission or reformation of the contract, nor imposition of a constructive trust, which are traditionally equitable remedies.[27]

The *Sofie* court quoted *Baker v. Prewitt*,[28] in which the Supreme Court construed the territorial code requirement that "in all actions for the assessment of damages the intervention of a jury must be had, save where a long account may authorize a referee, etc.[,]" and concluded:

> If our state constitution is to protect as inviolate the right to a jury trial at least to the extent as it existed in 1889, then *Baker's* holding provides clear evidence that the jury's fact-finding function included the determination of damages. This evidence can only lead to the conclusion that our constitution, in article I, section 21, protects the jury's role to determine damages.[29]

The codification of this right to have a jury determine money damages, found originally in the territorial code, has remained unchanged in our state statutes since 1893: "An issue of fact, in an action for the recovery of money only, . . . shall be tried by a jury[.]"[30]

Boeing argues, however, that Pilchuck's claims sound in

---

[26]*See* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 2.6(3), at 156 (2d ed. 1993) ("If the remedy sought is a coercive order, the claim is equitable; . . . . An action for an ordinary money judgment . . . is an action at law.") (footnotes omitted).

[27]*See* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES §§ 2.6(3), at 156-57, 4.3(6), (7) at 614-19 (2d ed. 1993). *Cf. Allard v. Pacific Nat'l Bank*, 99 Wn.2d 394, 400-01, 663 P.2d 104 (1983) (action for money damages is equitable in nature when beneficiaries of a trust seek to restore funds to the trust rather than to recover for themselves personally); *Ranta v. German*, 1 Wn. App. 104, 107, 459 P.2d 961 (1969) (action for money damages is equitable in nature where one main issue is whether the promissory note giving rise to the action should be canceled) (overruled in *Brown v. Safeway Stores*, 94 Wn.2d 359, 359-60, 617 P.2d 704 (1980), to the extent it holds that equity takes jurisdiction for all purposes where any of the main issues in an action is equitable).

[28]3 Wash. Terr. 595, 597-98, 19 P. 149 (1888).

[29]*Sofie*, 112 Wn.2d at 645-46.

[30]RCW 4.40.060.

equity, relying on language in several Washington cases referring to unjust enrichment or quantum meruit as "equitable." For example, in *Lynch v. Deaconess Medical Center*,[31] the Supreme Court remarked: "Quasi contracts are founded on the equitable principle of unjust enrichment[.]"[32] In *Lynch*, the court's brief comment was intended only to isolate the different elements of proof of implied in fact versus implied in law contracts. The court went on to find a failure of proof of unjust enrichment, in the context of a claim for recovery of attorneys fees on two theories: unjust enrichment or equitable subrogation. The discussion in *Lynch* is therefore unhelpful here.

In *CKP, Inc. v. GRS Construction Co.*,[33] the court faced an issue of prejudgment interest, and reached the unsurprising holding that damages for extra work under quantum meruit are unliquidated. In its discussion, the court remarked: "Quantum meruit is an equitable form of recovery defined as a reasonable amount for the work done."[34]

But equitable principles must be separated from exclusive equity jurisdiction. In *Bill v. Gattavara*,[35] while the Supreme Court likewise characterized an action for unjust enrichment as an "equitable proceeding," the court also discussed the true nature of an action for unjust enrichment:

> Thus, the substance of an action for unjust enrichment lies in a promise, implied by law, that one will render to the person entitled thereto that which, in equity and good conscience, belongs to the latter. At common law, such actions are brought under the principles of assumpsit; and where the cause of action arises from a tortious wrong, it is the general rule, whether or not there be an express contract, that the injured

[31]113 Wn.2d 162, 776 P.2d 681 (1989).

[32]*Lynch*, 113 Wn.2d at 165.

[33]63 Wn. App. 601, 821 P.2d 63 (1991), *review denied*, 120 Wn.2d 1010 (1992).

[34]*CKP*, 63 Wn. App. at 615.

[35]34 Wn.2d 645, 650, 209 P.2d 457 (1949).

party may waive the tort and sue in assumpsit, in which case the law will imply a contract on the part of the tort-feasor to pay the injured party a just remuneration for the damages suffered . . . .

Thus, while the action for unjust enrichment is an equitable proceeding, its essence is that of an action ex contractu.[36]

In *Ducolon Mechanical, Inc. v. Shinstine/Forness, Inc.*,[37] the court remarked that "quantum meruit and restitution . . . are legal remedies," and noted: "Ducolon has not requested equitable relief. In its original complaint, it requested damages or recovery in quantum meruit for the reasonable value of its services to Shinstine."[38]

As Pilchuck points out, its claims are most similar to those of the contractor in *S.P.C.S.* There, S.P.C.S. alleged Lockheed made unauthorized changes in specifications and improperly prepared its construction site, resulting in extra work for which S.P.C.S. claimed money damages. While Pilchuck did not cast its pleadings in contract or quasi contract language as did S.P.C.S., its claim is the same: payment for extra work not contemplated by the contract. Lockheed's defense was likewise the same; Lockheed alleged no extra work was required to perform under the contract. Also similar was the trial court's determination in *S.P.C.S.* that the issues were primarily equitable. Reversing, and holding that the issues were legal and a jury trial required, the Court of Appeals remarked: "The court has been called upon to construe a contract, determine if a breach has occurred, and determine what damages, if any, flow therefrom. It is well settled that these are legal issues."[39]

■ Most authorities agree that quasi contract, while invoking equitable principles, is a legal remedy. For example, Palmer remarks:

---

[36]34 Wn.2d at 650.

[37]77 Wn. App. 707, 893 P.2d 1127 (1995).

[38]*Ducolon*, 77 Wn. App. at 711 n.2.

[39]*S.P.C.S.*, 29 Wn. App. at 934.

Although Mansfield's description of quasi contract as "equita-' ble" has been repeated many times, this refers merely to the way in which a case [in quasi-contract] should be approached, since it is clear that the action is at law and the relief given is a simple money judgment.[40]

Palmer also noted the confusion as to terminology:

In current usage there is no single term to describe the law action. Most frequently perhaps it is called quasi contract; but quantum meruit is in common use, especially when recovery is sought of the value of services; and increasingly, as the term has gained acceptance, the action is described merely as one in restitution.

. . . Implied or quasi contract is a form of action used to recover money damages for any type of unjust enrichment.

. . . .

Courts often use the terms interchangeably without distinguishing them and treat them as if they had common elements.[41]

Historically, a remedy at law existed for Pilchuck's claim. While equity might also have offered a remedy, equity jurisdiction was not exclusive, and Pilchuck sought no equitable remedy.

Pilchuck's claim for damage for extra work was legal, not equitable. Since there was no equitable claim before the court after withdrawal of the lien claim, there was no need for an exercise of discretion under *Scavenius* to determine whether the action was primarily legal or equitable. Under article I, section 21 of the Washington Constitution and RCW 4.40.060, Pilchuck was entitled to a jury. We therefore reverse and remand for a new trial.

---

[40]GEORGE E. PALMER, THE LAW OF RESTITUTION § 1.2, at 9 (1978). *See also* 1 DAN B. DOBBS, LAW OF REMEDIES § 2.6(3), at 158 (2d ed. 1993) (quasi-contract claims are "indisputably claims 'at law.' ")

[41]GEORGE E. PALMER, LAW OF RESTITUTION (Supp. 1997) (citations omitted).

COLEMAN and BECKER, JJ., concur.

Review denied at 136 Wn.2d 1009 (1998).