135 P.3d 978 (2006)
133 Wash.App. 338
Tae Yon KIM, Respondent,
v.
Jeffrey DEAN, Deborah M. Dean, and the marital community composed of Jeffrey Dean and Deborah M. Dean, Appellants.
No. 55406-9-I.
Court of Appeals of Washington, Division 1.
June 5, 2006.
Reconsideration Denied August 10, 2006.
*979 Keith Allen Kemper and Chad Allred, Ellis Li & McKinstry PLLC, Seattle, for Respondent.
Evan L. Schwab and Brian William Grimm, Dorsey & Whitney, Seattle, for Appellants.
COLEMAN, J.
¶ 1 Tae Yon Kim brought a lawsuit against his former employers, Jeffrey and *980 Deborah Dean, over alleged promises that Kim would receive a portion of the proceeds when the Deans' company was sold. He sought recovery under claims of unjust enrichment and promissory estoppel. The superior court denied the Deans' motion to strike Kim's jury demand. The jury awarded Kim $500,000. The Deans appeal.
¶ 2 We reverse the judgment and remand for a nonjury trial. The Washington Constitution's guarantee of a right to a trial by jury does not encompass claims cognizable as equitable claims at the time of the adoption of the Constitution. Kim's claims derive from a theory of promissory estoppel, which Washington courts would have treated as an equitable claim in 1889.

FACTS
¶ 3 In December 2001, Tae Yon Kim filed a lawsuit against Jeffrey Dean, Deborah Dean and the Dean marital community. The complaint alleged that Kim had worked for the Deans' business, Spectrum Print & Mail Services, Ltd., and that the Deans had promised Kim that he would receive a portion of the proceeds upon the sale of Spectrum to another company. The complaint also alleged that the Deans fired Kim soon after the sale of Spectrum and did not provide him with the promised compensation. He sought recovery under theories of unjust enrichment and promissory estoppel and prayed for relief in the form of a constructive trust.
¶ 4 Kim filed a jury demand. The Deans moved to strike. The court denied the Deans' motion and allowed Kim to amend his complaint so that the prayer for relief requested "money . . . whether that award be characterized as damages, restitution, or otherwise."
¶ 5 After the presentation of evidence, the Deans moved for judgment as a matter of law on the issue of unjust enrichment. Following a colloquy with the trial judge, Kim withdrew the unjust enrichment claim. The Deans moved for judgment as a matter of law on the promissory estoppel claim, but this motion was denied. The case was submitted to the jury solely on a claim of promissory estoppel.
¶ 6 The jury found for Kim and awarded $500,000 in damages. The Deans moved for judgment as a matter of law or, in the alternative, for a new trial. The court denied the motion. The Deans appeal.

ANALYSIS
¶ 7 We begin by analyzing the Deans' argument that the superior court erred in denying their motion to strike Kim's jury demand. In doing so, we analyze an issue of first impression in Washington courtsIs there a right to jury trial under the Washington Constitution for a promissory estoppel claim? Our state constitution provides parties in a civil suit the right to trial by jury as the right existed at the time of the adoption of the constitution in 1889. Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 365, 617 P.2d 704 (1980). Accordingly, there is a right to trial by jury for a civil action that is purely legal in nature, but not one that is purely equitable in nature. Brown, 94 Wash.2d at 365, 617 P.2d 704.
¶ 8 Washington courts once held that if any one of the main issues of a case was equitable by nature, equity took jurisdiction of the entire case and there was no right to trial by jury. Coleman v. Highland Lumber, Inc., 46 Wash.2d 549, 283 P.2d 123 (1955); Ranta v. German, 1 Wash.App. 104, 459 P.2d 961 (1969) (citing Coleman). But in Scavenius v. Manchester Port Dist., 2 Wash. App. 126, 467 P.2d 372 (1970), Division Two of this court ruled that the adoption of Cr 38 and Cr 39 in 1967 gave superior courts more discretion than under Coleman "in allowing some legal issues to be tried to the jury even though one of the parties has raised an equitable issue." Scavenius, 2 Wash.App. at 129, 467 P.2d 372.
¶ 9 In Brown, our Supreme Court explicitly adopted the reasoning set forth in Scavenius. Brown, 94 Wash.2d at 367, 617 P.2d 704. The Supreme Court in Anderson reaffirmed its adoption of Scavenius. State v. Anderson, 94 Wash.2d 727, 729-30, 620 P.2d 76 (1980).
In Scavenius v. Manchester Port Dist., 2 Wash.App. 126, 467 P.2d 372 (1970), the Court of Appeals Division Two, construed *981 [CR 38 and 39] as giving the trial court a wide discretion in cases involving both legal and equitable issues to submit to a jury some, none, or all of the legal issues presented. It set forth a number of criteria for the exercise of that discretion. We approved those criteria in Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 617 P.2d 704 (1980). In that case, we said that where an action is purely equitable in nature, there is no right to a trial by a jury, citing Dexter Horton Bldg. Co. v. King County, 10 Wash.2d 186, 116 P.2d 507 (1941). We held that, where the pleadings present a mixture of legal and equitable issues but the primary relief sought is equitable in nature, denial of a jury trial is proper.
Anderson, 94 Wash.2d at 729-30, 620 P.2d 76 (footnote omitted). "[I]n an equity case the court may empanel a jury only for advisory purposes, unless both parties consent to be bound by the verdict[.]" Anderson, 94 Wash.2d at 731, 620 P.2d 76 (citing CR 39(c)).
¶ 10 Under the historical test, Washington courts determine the overall nature of an action by "look[ing] to see whether the claims in question were within the exclusive jurisdiction of the equity courts when the state constitution was adopted in 1889." Auburn Mech., Inc. v. Lydig Constr. Inc., 89 Wash.App. 893, 897-98, 951 P.2d 311 (1998). In Auburn, the court ruled that the issues were legal, not equitable, and that a denial of a jury trial was erroneous when a subcontractor sued Boeing for breach of an "implied-in-law" duty and asserted a right to recover under the theory of quantum meruit/unjust enrichment "`for the amount that it deserves, a reasonable amount for work performed.'" Auburn, 89 Wash.App. at 895, 951 P.2d 311. The Auburn court noted that "[t]he modern term for this type of action is restitution. Restitution is not exclusive to equity." Auburn, 89 Wash.App. at 900, 951 P.2d 311. The early forms of restitution included quasi contract, which "developed out of the common-law writ of assumpsit, and included subordinate counts such as a count for work and labor done, otherwise known as quantum meruit." Auburn, 89 Wash.App. at 900-01, 951 P.2d 311. "In an action in a law court, a plaintiff prevailing in a suit in quasi contract was given a money judgment." Auburn, 89 Wash.App. at 901, 951 P.2d 311 (footnote omitted). Equity courts developed parallel remedies of constructive trust and equitable liens for claims for the value of extra work. Auburn, 89 Wash.App. at 901, 951 P.2d 311. But in the law courts and in modern actions for quantum meruit, the remedy sought is money damages. Auburn, 89 Wash.App. at 901, 951 P.2d 311. And money damages "is exactly the remedy juries traditionally determine." Auburn, 89 Wash.App. at 901, 951 P.2d 311. The court further ruled that "equitable principles must be separated from exclusive equity jurisdiction" and that "[m]ost authorities agree that quasi contract, while invoking equitable principles, is a legal remedy." Auburn, 89 Wash.App. at 903, 951 P.2d 311.
¶ 11 Kim argues that his promissory estoppel claim, like the unjust enrichment claim of Auburn, is substantively a legal claim. He argues that promissory estoppel, like unjust enrichment, arises from a promise. He further argues that courts have ruled that promissory estoppel, like unjust enrichment, has roots in assumpsit. Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 824 (2d Cir. 1994) (stating that the detrimental reliance aspect of promissory estoppel may have a "legal root" in assumpsit but that the doctrine of promissory estoppel as a whole "is a direct descendent of equitable estoppel"). We disagree.
¶ 12 Because the doctrine of promissory estoppel did not exist at the time of the adoption of the Washington Constitution in 1889, we must determine whether a claim cognizable today as promissory estoppel would have been considered a legal claim or an equitable claim in 1889 and whether such a claim would have been tried by a jury or the court. For causes of action that did not exist in 1889, a proper analysis is to look for then-existing proceedings that are analogous to the present action. Sofie v. Fibreboard Corp., 112 Wash.2d 636, 649, 771 P.2d 711 (1989) (citing Tull v. United States, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365, (1987)).
¶ 13 The equitable nature of a promissory estoppel claim is illustrated in Henschel v. *982 Oregon Fire & Marine Ins. Co., 4 Wash. 476, 30 P. 735, 31 P. 332 (1892). In Henschel, a holder of a fire insurance policy sought the full amount of insurance after fire destroyed his goods in a new location, when the insurance company had not yet endorsed the new location but the insurer's agent promised to endorse the policy. Henschel, 4 Wash. at 477, 30 P. 735. The court characterized this argument as follows: "[T]he respondent, invoking the equitable rule that since he has relied upon the promise made to him, what was agreed to be done shall be taken as having been done, claims that the contract is what it, but for the negligence of the agent, undoubtedly would have been." Henschel, 4 Wash. at 478, 30 P. 735 (emphasis added). See also Mackintosh v. Renton, 2 Wash. Terr. 121, 3 P. 830 (1882); Tolmie v. Dean, 1 Wash. Terr. 46, 1858 Wash. Terr. LEXIS 2 (1858).
¶ 14 The Supreme Court of Minnesota noted in Olson v. Synergistic Techs. Bus. Sys., 628 N.W.2d 142 (2001), that the origins of promissory estoppel "lie in the early equity decisions of England's Chancery courts, which were the first courts to grant relief to plaintiffs who `had incurred detriment on the faith of the defendant's promise . . . .'" Olson, 628 N.W.2d at 150 (quoting J.B. Ames, The History of Assumpsit, 2 Harv. L.Rev. 1, 14 (1888)). "A hallmark of the Chancery court's early decisions was the desire to compensate a plaintiff for harm suffered as a result of the plaintiff's good-faith reliance on a defendant's otherwise unenforceable promise." Olson, 628 N.W.2d at 150. As the power of the Chancery courts grew, "the common law courts then sanctioned the action of assumpsit to provide relief to plaintiffs pleading actions on the case[.]" Olson, 628 N.W.2d at 150. "The relief provided by the common-law courts under the writ of assumpsit was based on the plaintiff's consideration in the form of action or forbearance in reliance on the promise, i.e., detrimental reliance as a form of consideration." Olson, 628 N.W.2d at 150. "In contrast, the Chancery courts provided equitable relief based solely on the plaintiff's good-faith reliance." Olson, 628 N.W.2d at 150.
American courts adopted the Chancery court's equitable cause of action based on good-faith reliance to enforce promises unsupported by considerationnot as a consideration substitute, but rather as a doctrine based on reliance that the courts could use to prevent injustice. Eventually, the American courts characterized this line of cases as "promissory estoppel[.]"
Olson, 628 N.W.2d at 151 (internal citations omitted). Furthermore, a plaintiff who seeks monetary damages under a theory of promissory estoppel ultimately seeks relief "which was available only in equity, namely, the enforcement of defendant's gratuitous promise. . . ." C & K Eng'g Contractors v. Amber Steel Co., 23 Cal.3d 1, 10, 151 Cal.Rptr. 323, 587 P.2d 1136 (1978). Money damages have been recognized in cases of gratuitous promises only "by application of the equitable doctrine of promissory estoppel which renders such promises legally binding." C & K, 23 Cal.3d at 10, 151 Cal.Rptr. 323, 587 P.2d 1136. "[T]he addition, in such cases, of a prayer for damages does not convert what is essentially an equitable action into a legal one for which a jury trial would be available." C & K, 23 Cal.3d at 11, 151 Cal.Rptr. 323, 587 P.2d 1136. Because promissory estoppel derives from the Chancery court's equitable cause of action, Washington courts in 1889 would have recognized a promissory estoppel claim as an equitable claim to be decided by the court, not a jury.
¶ 15 The Washington Supreme Court Committee on Jury Instructions has recognized the equitable nature of promissory estoppel. The committee recognized that Washington appellate courts had not yet decided whether promissory estoppel was appropriate for submission to a jury, but in an accompanying note the committee stated that it believed
that because of the equitable nature of promissory estoppel, the issue will generally be decided by the court. However, if the issue is submitted to the jury it will generally be appropriate to devise specific factual questions for the jury to accompany this instruction. Whether an estoppel results from the established facts will then be a question for determination by the court, based on the jury's factual determinations. . . . This instruction is included for use at the discretion of the trial court.
*983 6A Washington Pattern Jury Instructions: Civil 301A.01, Note on Use at 203 (2005) (WPI). The committee also approvingly cited C & K, in which the California Supreme Court ruled that because a plaintiff's lawsuit was based entirely on promissory estoppel, neither party in the suit was entitled to a jury trial. 6A WPI 301A.01, comment at 202 (quoting C & K, 23 Cal.3d at 5, 151 Cal.Rptr. 323, 587 P.2d 1136). The Committee emphasized the importance given by the C & K court to the judicial discretion inherent in the requirement of injustice avoidable only by enforcement of the promise. 6A WPI 301A.01, cmt. at 202 (quoting C & K, 23 Cal.3d at 8, 151 Cal.Rptr. 323, 587 P.2d 1136).
¶ 16 Similarly, Kim's promissory estoppel claim was a purely equitable claim that does not give rise to a right to a jury trial. Promissory estoppel based upon good-faith reliance unsupported by consideration derives from an equitable cause of action unique to Chancery courts. As Henschel demonstrates, promissory estoppel would have been considered an equitable claim in 1889 and would have been tried by a court, not a jury.
¶ 17 We recognize that at the time of the court's denial of the Deans' motion to strike the jury demand, Kim was seeking recovery under an additional theory of unjust enrichment. But the only claim submitted to the jury was the promissory estoppel claim. Furthermore, the unjust enrichment theory derived from the alleged failure by the Deans to fulfill their promises to Kim. While it is true that Kim's amended complaint requests money damages, not an equitable remedy such as a constructive trust, Kim actually seeks enforcement of alleged promises to recompense him with proceeds of the sale.
¶ 18 As the C & K court recognized, money damages in a promissory estoppel claim are realized only by rendering the promise legally binding on the promissor. Furthermore, a promissory estoppel claim requires a balancing of the equities, which is traditionally the province of an equity court. Unlike the quantum meruit/unjust enrichment claim in Auburn, Kim's promissory estoppel claim does not present a quantifiable measure of damages. Instead, a court must examine the underlying fairness of the circumstances, including the injustice that can be avoided only if the alleged promise or promises are enforced.
¶ 19 For these reasons, Kim's suit was a purely equitable claim, and Kim did not enjoy a constitutional right to a jury trial. An order granting a demand for a jury trial is a reversible one. Anderson, 94 Wash.2d at 732, 620 P.2d 76. Here, the trial court empanelled a jury for the purpose of trying the case, not for rendering an advisory verdict. A court cannot do so when the issue before it is equitable. "[I]n an equity case the court may empanel a jury only for advisory purposes, unless both parties consent to be bound by the verdict[.]" Anderson, 94 Wash.2d at 731, 620 P.2d 76 (citing CR 39(c)). As the Anderson court recognized, "a jury is capable of ascertaining the facts upon which an equitable decree can be based, [but] the function of balancing equities can be performed only by a learned judge." Anderson, 94 Wash.2d at 732, 620 P.2d 76. Even when a case presents a mixture of legal and equitable issues, a court has the discretion only to try the legal issues before a jury. We reverse the superior court's order denying the Deans' motion to strike Kim's demand for a jury and remand for further proceedings.
¶ 20 We next consider the Deans' argument that they are entitled to judgment as a matter of law on Kim's promissory estoppel claim. They contend that the evidence is insufficient to establish that they made a promise to Kim or that Kim changed his position in reliance on the promise. In particular, the Deans contend that as a matter of law, Kim could not prove a change in position on the basis of testimony that he considered seeking different employment but did not do so. A party seeking recovery under a theory of promissory estoppel must prove five prerequisites: (1) A promise that (2) the promisor should reasonably expect to cause the promisee to change his position and (3) that does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. Elliott Bay Seafoods, Inc. v. *984 Port of Seattle, 124 Wash.App. 5, 13, 98 P.3d 491 (2004).
¶ 21 Kim does not address the cases cited by the Deans and instead responds by arguing that the controlling law is not case law but the court's instructions to the jury.[1] He contends that the jury instruction on promissory estoppel, to which no exception was taken, provided that the jury could find that he changed position by staying with the company, foregoing other opportunities, and working longer days than normal. He further argues that the evidence was sufficient to prove a promise by the Deans and to prove that he changed position in reliance on the Deans' promise by continuing to work with the company. We disagree.
¶ 22 We initially note that the language of the jury instruction does not foreclose the Deans from arguing that evidence about Kim's decision to forego other employment is insufficient as a matter of law to establish the change-in-position element of promissory estoppel. But more importantly, the jury instruction does not govern in the Deans' motion for judgment as a matter of law. In Rhoades v. De Rosier, 14 Wash.App. 946, 546 P.2d 930 (1976), this court ruled that "[w]hile instructions to which no exception is taken become the law of the case, the doctrine does not bar review of the granting or denial of a directed verdict." Rhoades, 14 Wash.App. at 948 n. 2, 546 P.2d 930. "Whether a verdict should have been directed is a question of law, and its resolution is not controlled by the pronouncements of the instructions, but by the applicable law." Rhoades, 14 Wash.App. at 948 n. 2, 546 P.2d 930. The Eighth Circuit of the United States Court of Appeals has similarly noted that instructions to which no exception was taken do not control in a party's motion for a directed verdict.
"It is true, of course, that an appellant may not challenge on review the correctness of instructions to which he took no exceptions or only a general exception. . . . In that sense, and in that sense only, it may be said that the instructions to which no exceptions are taken become the law of the case for determining whether the instructions are subject to review on appeal. . . . But in determining whether a trial court has erred in denying a motion for a directed verdict made at the close of the evidence, it is the applicable law which is controlling, and not what the trial court announced the law to be in his instructions."
Hanson v. Ford Motor Co., 278 F.2d 586, 593 (8th Cir.1960) (quoting Coca Cola Bottling Co. of Black Hills v. Hubbard, 203 F.2d 859, 862 (8th Cir.1953) (internal citations omitted)). A court must follow Washington law, not jury instructions, in considering the Deans' motion for judgment as a matter of law.
¶ 23 Because we cannot determine on the basis of the parties' briefing whether the evidence was sufficient under Washington law, we decline to rule on the merits of the Deans' argument. Kim relied on the faulty argument that the jury instructions govern, and as a result, this court did not receive adequate briefing whether Kim's evidence was sufficient to demonstrate promissory estoppel under Washington lawparticularly whether Kim could establish a change in position with testimony that he considered seeking other employment but instead continued in the employ of the Deans. We believe the issue of the sufficiency of the evidence can best be addressed by the lower *985 court if raised on remand.[2]
¶ 24 In summary, we reverse the superior court's denial of the Deans' motion to strike Kim's jury demand, and remand for further proceedings.
WE CONCUR: ELLINGTON and BAKER, JJ.
NOTES
[1] Jury instruction 5 defined promissory estoppel and listed its elements as follows:

"Promissory estoppel means that when justice requires it, a promise will be enforced when another person reasonably relied upon that promise.
"The party asserting a claim of promissory estoppel, in this case, Tae Kim, has the burden of proving, by a preponderance of the evidence, each of the following:
"(1) that Jeff and Deborah Dean made a promise to pay Tae Kim a portion of the proceeds from the sale of the company;
"(2) that Jeff and Deborah Dean should reasonably have expected that promise to cause Tae Kim to `change position' by staying with the company, foregoing other opportunities, and working longer days than normal;
"(3) that Tae Kim actually did change position by staying with the company, foregoing other opportunities, and working longer days than normal;
"(4) that when Tae Kim changed position, he was relying on a promise of Jeff and Deborah Dean, and was justified in doing so; and
"(5) that injustice can be avoided only if the promise is enforced."
[2] The Deans additionally argue that the trial court erred in refusing to vacate the judgment and grant a new trial on the ground that the jury's award was unjustified by the evidence and was so excessive as to indicate unmistakable prejudice. Because we reverse the judgment and remand for further proceedings, we do not address this additional argument.