[No. 24974-6-I.   Division One.   July 29, 1991.]

FRANCES K. KELLY, *Appellant*, v. WILLIAM B. FOSTER III, ET AL, *Respondents*.

*Robert B. Gould* and *Law Offices of Robert B. Gould,* for appellant.

*Roger K. Anderson, Sam B. Franklin,* and *Lee, Smart, Cook, Martin & Patterson,* for respondents.

SCHOLFIELD, J. — Appellant Frances Kelly appeals the trial court's denial of her claim for attorney's fees. We affirm.

FACTS[1]

Frances Kelly was the niece of decedent Leo Virgil Hollowell and the sole beneficiary of his estate. The executor of the Hollowell estate was Kelly's father, Willard A. Kates, who was represented by attorney Herman Michelson up until the time of Michelson's death in September 1981. After that, Kates was represented by defendant William B. Foster. Michelson had office-sharing arrangements with defendants R. Scott Hutchison and Foster, and while they were not formal partners, they held themselves out to the public as Michelson, Hutchison & Foster. The major asset of the Hollowell estate was a 3-acre tract of land located in Edmonds, Washington. Decedent Hollowell's home was located on 1 acre, with the remaining 2 acres undeveloped.

---

[1]A complete report of proceedings has not been filed in this case. We have no trial testimony before us. We, therefore, rely only upon those facts about which there appears to be no serious dispute.

Foster was the attorney for Mr. and Mrs. Per Dropping and their solely owned corporation, Norsk Construction Company (hereinafter Norsk). In the spring of 1981, either Michelson or Foster contacted Dropping and asked if he was interested in the Hollowell estate property. After viewing it, Dropping expressed interest and subsequently entered into an agreement with Kates to purchase the 3-acre tract for $240,000. After the purchase and sale agreement was finalized, Foster and Dropping had discussions as to how Dropping would finance the acquisition. Foster suggested that he would be willing to purchase that portion of the property on which the house was located, and Dropping agreed.

On June 1, 1981, the transaction was closed as follows: (1) Kates sold the 3-acre tract to Per and Patricia Dropping by real estate contract; (2) the Droppings assigned the real estate contract to Norsk; (3) Norsk sold a portion with the house on it to William and Elizabeth Foster.

Kelly contended in the trial court that the firm of Michelson, Hutchison & Foster, without disclosing the relationship of the firm to the Droppings or Norsk, recommended that Kates sell the property to the Droppings, at a price that was well under market value. Kelly further contends that the portion of the property on which the home was located was sold by Norsk to Foster without the knowledge or consent of Kates and at a price below market value.

In May 1987, Kelly brought this suit against Hutchison and Foster. In her complaint, Kelly requested an accounting, damages for legal malpractice and breach of fiduciary duty, and damages for unfair or deceptive practices under the Consumer Protection Act (CPA), RCW 19.86. Kelly requested and was granted a jury trial. Her CPA claims were apparently dismissed prior to trial.

The trial court was of the view that the case should be treated as one alleging a breach of fiduciary duty, and both sides submitted jury instructions on that issue.

On July 11, 1989, after both sides had rested but prior to closing argument, Kelly moved under CR 15(b) to amend the pleadings to specifically allege a claim for attorney's fees, arguing that should the jury find a breach of fiduciary duty, she would be entitled to an award of attorney's fees. The trial court reserved ruling on the issue until after the jury had returned its verdict. Kelly was also claiming that all attorney's fees paid by the estate to Foster would have to be refunded in the event that a breach of fiduciary duty was found. By stipulation, this issue was also reserved.

The jury was instructed on theories of breach of fiduciary duty, breach of the Code of Professional Responsibility, and legal malpractice. The jury was also instructed that "[a]s used in these instructions, the terms 'legal malpractice' or 'breach of fiduciary duty' are used interchangeably." Instruction 13.

In a special verdict form filed July 17, 1989, the jury found that defendant Foster had breached his fiduciary duty to the plaintiff and that the breach was a proximate cause of damages to the plaintiff in the amount of $85,000.

In a posttrial order, the court denied Kelly's motion for attorney's fees. A separate posttrial order denied Kelly's request for reimbursement of attorney's fees paid by the estate to Foster. This appeal timely followed.

### ATTORNEY'S FEES PROPERLY DENIED

Kelly contends that under *Allard v. Pacific Nat'l Bank*, 99 Wn.2d 394, 663 P.2d 104 (1983), an award of attorney's fees is mandated whenever a fiduciary breaches his or her duty.

■ A court will not award attorney's fees as part of the cost of litigation in absence of a contract, statute, or recognized equitable ground. *PUD 1 v. Kottsick*, 86 Wn.2d 388, 389, 545 P.2d 1 (1976).

We reject Kelly's contention that *Allard* mandates an award of attorney's fees in this case. In *Allard*,

beneficiaries of the Stone trusts successfully sued the trustee, Pacific National Bank, for breach of fiduciary duty in its management of the trust. The court held that the action was equitable in nature, explaining at page 401 as follows:

> None of the beneficiaries have a present right to receive distribution of the trust corpus. Their only remedy for depletion of the trust corpus is restoration of the value of the corpus by the trustee, often referred to as a "surcharge" on the trustee. *See, e.g., Lockwood v. OFB Corp.,* 305 A.2d 636, 638 (Del. Ch. 1973); 3 A. Scott, *Trusts* § 190.6 (3d ed. 1967). Since the trustee is under no duty to pay money besides the trust income to the beneficiaries, they have no action at law for breach of the trust agreement.

In the *Allard* opinion at page 400, the court draws a distinction between cases where the plaintiff seeks an immediate recovery for himself, as distinguished from those cases where a beneficiary of a trust sues the trustee in order to restore funds to the trust. The court points out that the former actions are legal in nature, whereas the latter actions are considered equitable in nature.

At pages 400-01, the *Allard* court stated:

> The distinction between actions at law and those at equity is based on the nature rather than the form of the proceeding. Even if the action is one for money damages, it may be primarily equitable in nature. Where the beneficiaries seek recovery for themselves personally, the action is considered legal in nature. Where, as in this case, the beneficiaries of a trust sue the trustee in order to restore funds to the trust, the action is considered equitable in nature.

(Citations omitted.)

■ Kelly's claims in this case are not equitable in nature. She claims no equitable remedy. Her action is one to recover damages for herself, a traditional legal remedy. At the outset of the trial, both Kelly and Foster treated the case as an action for legal malpractice. Like many such cases, the basis of liability was a claimed breach of fiduciary duty. In much of their daily work, lawyers act as a fiduciary for the client, in that they have a duty to act

in and for the client's best interests at all times and to act in complete honesty and good faith to honor the trust and confidence placed in them. These duties require full communication and candor, as well as performance meeting professional standards. Black's Law Dictionary 753 (4th rev. ed. 1968). A review of the Rules of Professional Conduct will suggest that most cases of proven legal malpractice will involve a breach of one or more fiduciary duties. As stated in *Perez v. Pappas*, 98 Wn.2d 835, 840-41, 659 P.2d 475 (1983), "the attorney-client relationship is a fiduciary one as a matter of law and thus the attorney owes the highest duty to the client."

The Washington courts have not recognized the ordinary legal malpractice action as one in which attorney's fees can be recovered as part of the cost of litigation. In *Perez v. Pappas, supra,* a dispute arose out of the breach of a fiduciary duty by an attorney. The dispute involved the resolution of the correct attorney's fee to be paid by the client and was settled by an accord and satisfaction. The plaintiff, Perez, claimed that upon proof a defendant had breached a fiduciary duty, an award of attorney's fees was always recoverable. The plaintiff relied upon, but the court distinguished, *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976) as being a case where the attorney's fee award was based on the equitable ground of preserving an identifiable fund. The *Perez* court rejected the plaintiff's claim for attorney's fees, despite a finding that the attorney had breached a fiduciary duty.

This is a legal malpractice action where there is a remedy at law and no equitable relief is requested or granted. While a breach of fiduciary duty was found by the jury, that fact alone does not mandate an award of attorney's fees as part of the cost of litigation. The trial court did not err in denying Kelly's request for attorney's fees.

### No Error in Denying Reimbursement of Attorney's Fees Paid by Estate

Kelly contends the finding of breach of fiduciary duty by Foster compels reimbursement of all attorney's fees paid Michelson, Hutchison & Foster for probate of the estate. To support this contention, Kelly relies primarily upon *Ross v. Scannell*, 97 Wn.2d 598, 647 P.2d 1004 (1982) and *Kane v. Klos*, 50 Wn.2d 778, 314 P.2d 672 (1957).

The *Ross* case involved a claim for attorney's fees based upon a contingent fee agreement. The court found the services called for by the fee contract had not been fully performed. The court also had before it several charges of unethical conduct by the attorney. The *Ross* court concluded that if the attorney was entitled to recover any fees, the recovery must be on a basis of quantum meruit. In its discussion, the court stated that "[p]rofessional misconduct may be grounds for denying an attorney his fees." *Ross*, at 610. The court quoted from *Dailey v. Testone*, 72 Wn.2d 662, 664, 435 P.2d 24 (1967) as follows:

> When an attorney is guilty of fraudulent acts or gross misconduct in violation of a statute or against public policy, the client may have a complete defense to the attorney's action for fees.

*Ross*, at 610.

The *Ross* court concluded by remanding to the trial court for the purpose of determining what fees, if any, Ross would be allowed to recover upon a theory of quantum meruit.

█ It is apparent that while attorney misconduct can be so egregious as to constitute a complete defense to a claim for fees, not every act of misconduct will justify such a serious penalty. It is implicit in the *Ross* opinion that the trial court has discretion in deciding what impact, if any, lawyer misconduct will have on a claim for attorney's fees.

In *Kane v. Klos, supra,* the court denied compensation because the claimant was found guilty of deliberate fraud through manipulation of corporate stock in order to gain an illegal personal profit for himself. The facts are so clearly distinguishable from the case at bar that the case has no value as a precedent except to state the rule that one can forfeit all right to compensation by engaging in egregious fraudulent conduct.

In the case at bar, the trial judge was not impressed with Kelly's claims that Foster breached a fiduciary duty. In denying Foster's motion for judgment notwithstanding the verdict, the court stated in its memorandum decision that although it found the evidence "totally wanting", the jury did not.

In a letter to counsel, the court stated:

> [T]here are no facts in this case which warrant imposing the additional burden found potentially appropriate in *Ross v. Scannell,* 97 Wn.2d 598 (1982). Quoting from *Dailey vs. Testone,* 72 Wn.2d 662 (1967), the *Ross* Court said:
>
>> When an attorney is guilty of *fraudulent acts* or *gross misconduct* in violation of a statute or against public policy, the client may [have a] complete defense to the attorney's action for fees.

These and other comments make it clear that the trial court did not find factors present in this case justifying a reimbursement to Kelly of attorney's fees paid by the estate. Such a ruling is well within the court's discretion and will not be overturned.

## MOTION TO AMEND

Kelly contends that the trial court, pursuant to CR 15(b), should have allowed an amendment to conform to the evidence because the issue of breach of fiduciary duty was tried with the express knowledge and consent of both parties and without objection.

Kelly's motion to amend was primarily for the purpose of getting before the trial court her claim that if she prevailed on the issue of a breach of fiduciary duty, she

158

was entitled to attorney's fees. While the court did not expressly grant the motion to amend, the trial court did fully consider and rule upon all of Kelly's claims in respect to attorney's fees. It follows that Kelly suffered no prejudice by reason of the trial court's failure to grant her motion to amend under CR 15(b).

The judgment is affirmed.

PEKELIS and KENNEDY, JJ., concur.

Review denied at 118 Wn.2d 1001 (1991).