268 P.3d 945 (2011)
165 Wash.App. 33
In the Matter of the Estate OF Lloyd W. Foster and Alice H. Foster.
Laurance FOSTER, Appellant,
v.
Jennifer J. GILLIAM, Special Representative (discharged); and Sandra Bates Gay, Special Administrator (discharged), Respondents.
Nos. 64633-8-I, 65132-3-I.
Court of Appeals of Washington, Division 1.
October 31, 2011.
Reconsideration Denied December 19, 2011.
*946 Brian J. Carl, Attorney at Law, Seattle, WA, for Appellant.
Jennifer Jean Gilliam, Attorney at Law, Seattle, WA, Sandra Bates Gay, Attorney at Law, Bellevue, WA, for Respondent.
BECKER, J.
¶ 1 Special appointments became necessary in this trust proceeding because appellant Laurance Foster, who served at various times as a trustee, violated his fiduciary duty. We conclude the trial court did not err in *947 denying Foster's request for a jury trial and in holding him personally responsible for amounts due to minor beneficiaries and for the expenses incurred by the special appointees. All judgments are affirmed.

FACTS
¶ 2 Lloyd and Alice Foster died, leaving an estate consisting primarily of real estate in Hawaii and a bank account. The value of the gross probate estate was estimated at about $682,000.[1] In June 2003, their son Alan Foster was appointed personal representative of the estate, as designated by the wills.
¶ 3 The Fosters had created a revocable living trust and had executed reciprocal pour-over wills in favor of the trust, so that the trust was the sole beneficiary under the wills. The trust provided a 35 percent share to the Fosters' son Laurance, a 25 percent share to Alan, a 20 percent share to the grandchildren, and a 20 percent share to the great-grandchildren. The trust funds for the grandchildren and great-grandchildren were not to be distributed until the beneficiary reached 30 years of age, except that funds could be distributed for a beneficiary's postsecondary education. Any remaining funds would then be distributed when the beneficiary turned 30. Under the trust, Alan became a successor cotrustee upon his mother's death. Other persons designated by the trust to serve with Alan declined to accept the position of cotrustee. The proceedings in King County Superior Court involving the administration of the estate and trust were generally before court commissioners, primarily Commissioner Eric Watness at first and then Commissioner Carlos Velategui.
¶ 4 In December 2003, the court appointed attorney Jennifer Gilliam as a special representative for the interests of the great-grandchildren, who were minors, concerning a proposed agreement to split the administration of the trust between Alan and his brother Laurance. This particular agreement did not come to fruition because some of the beneficiaries did not consent to it. However, Alan and Laurance petitioned in January 2004 to have Laurance appointed as cotrustee, without giving notice to Gilliam. The court granted the request ex parte. Gilliam discovered this and reported the lack of notice to the court. In August 2004, the court vacated the appointment of Laurance and directed Gilliam to represent the best interests of the minors in the probate and trust proceedings. Eventually, as a result of Gilliam's efforts, it would come to light that Alan and Laurance were distributing assets disproportionately to particular beneficiaries (including Laurance) instead of accumulating them to be divided in shares according to the directives of the trust.
¶ 5 As the extensive record shows, what should have been a simple estate and trust matter became protracted and contentious. At the outset, Alan and Laurance came into conflict with the attorneys then representing the estate, Diana Zottman and Gregory Cromwell, both employed by the law firm Curran Mendoza P.S. For example, Zottman filed a declaration stating that Laurance should not serve as cotrustee and that Laurance "did not want to probate the Estate of his parents at all."[2] Alan and Laurance claimed the firm was charging a lot of money and accomplishing nothing. For example, Laurance stated in a declaration filed in July 2004 that nothing had been accomplished except a bill from Curran Mendoza for $23,000.[3] Correspondence between Laurance and Curran Mendoza also showed significant discord.[4] The court granted the firm's request to withdraw in August 2004.
¶ 6 The administration of the estate and trust continued to lag. Alan did not respond to Gilliam's requests for information. Gilliam asked the court to remove Alan from his responsibilities as personal representative and trustee because she doubted his capability to perform adequately. She asked the court to appoint replacements, preferably *948 outside professionals. The court denied these requests in January 2005.
¶ 7 Laurance renewed his request to be appointed cotrustee along with Alan. Gilliam expressed reservations. She asserted that Laurance "initially withheld copies of important estate planning documents evidencing the more recent plan of his parents, which included provisions for the minors, while demanding that the estate be shared only between he and his brother, contrary to the provisions of documents in his possession."[5] Despite Gilliam's opposition, the court reappointed Laurance as cotrustee on January 26, 2005.
¶ 8 Throughout 2005, the court expected that Alan would provide an accounting of the trust and a proposed distribution to the minors. Review hearings were scheduled and then continued. On June 8, 2005, William Stoddard, an attorney hired by Alan to represent the estate, submitted an interim report representing that the administration of the estate would soon be completed. A review hearing intended for review of the final report and accounting of the estate was held on October 5. Neither Alan nor Stoddard appeared. The court entered an order to show cause and set a hearing date of November 9, 2005. The matter was continued to January 18, 2006. Meanwhile in December 2005, Stoddard notified Gilliam that he intended to withdraw as attorney for the estate. Gilliam reported to the court that no accounting had been produced. Laurance then provided an accounting showing that individual trust accounts for the minors had been funded at less than $400 apiece, even though the information then available concerning the assets of the estate and trust showed that each of them was entitled to approximately $15,000.
¶ 9 At the hearing on January 18, 2006, the court granted Gilliam's request for outside assistance by removing Alan as personal representative of the estate and appointing attorney Sandra Bates Gay as a special administrator to conduct discovery and report to the court on the status of the probate estate. Alan and Laurance were ordered to cooperate with Gay, but they did not respond to her efforts to contact them. The court reserved for future determination the extent to which Alan would be held personally liable for delaying the administration of the estate.
¶ 10 Around this time, Alan sent letters to Stoddard and Gilliam stating that he had distributed $514,000 to the heirs on January 23, 2004, that the estate was closed, that Gilliam's appointment was illegal, and that Stoddard should withdraw immediately. In late March 2006, Laurance and Alan personally sent letters to Gilliam and Gay. Alan's letter to Gilliam asserted that, among other things, "the estate has been closed," the "Trust belongs to the State of Hawaii," he and Laurance had "filed a complaint with the Bar Association," Commissioner Watness, former estate attorney Diane Zottman, Gay, and Gilliam were "cronies that work together on a regular basis," and all of them "should be disbarred and do some prison time."[6] Laurance sent similar letters to Gay, alleging that these same individuals had a conspiracy to "bleed the Estate for over $75,000."[7]
¶ 11 In March 2006, Gay filed an interim report. Neither Alan nor Laurance appeared at the hearing at which the report was presented. Gay asked the court to issue citations to Alan and Laurance, directing them to appear and cooperate. In a declaration signed on March 30, 2006, Laurance stated that the "$514,000 distribution from the Estate to the Heirs was done in accordance with the terms of the Will and Trust" and that the "estate is closed."[8]
¶ 12 In April 2006, Gay again asked the court to cite Alan and Laurance for failure to cooperate. Laurance wrote Gay a letter in May accusing her of "stealing from dead people and children."[9] In another letter, he asserted that the "Foster Family Trust is closed."[10] Nevertheless, a meeting was arranged *949 for May 31, 2006, at which Alan, Laurance and newly obtained counsel met with Gilliam and Gay to assist them with accounting for the estate and trust. At this meeting, Laurance disclosed his own personal knowledge and approval of the distributions made by Alan to particular heirs in January 2004. Alan revealed that a disproportionate distribution of $80,000 had been made to one particular grandchild. Also at this meeting, Laurance provided documentation that more funds had been added to the minor trust accounts bringing them to around $5,000 each.
¶ 13 Still, no complete accounting of the estate had been provided by the time of a new deadline set for August 23, 2006. At a hearing on this date, the court granted Gilliam's petition to have the minor trust funds properly funded. According to Gilliam's petition, the net estate and trust assets available for distribution were at least $925,837.90. Twenty percent of this was $185,167.58. When divided among the 12 great-grandchildren, 8 of whom were minors, the amount due to each was $15,430.00. The existing accounts held only about $5,000.00 for each child. The court ordered a judgment against Alan in favor of the 8 minor beneficiaries in the amount of $10,430.00 each, totaling $83,400.00. The court removed Alan from his position as cotrustee. At the request of Gilliam and Gay, the court also entered judgment against Alan for the fees they had incurred at this point. The court observed that Laurance as well as Alan had been purposefully frustrating the administration of the estate and reserved the issue of making Laurance equally responsible for the expense of work done by Gilliam and Gay.
¶ 14 Also at the hearing in August 2006, the court found that real property transferred to Alan in 1998 was an asset of the trust. The court ordered Alan to convey the property to Laurance, the remaining trustee. Alan did not comply with the order. Although Laurance's signature is on the order, throughout 2007 Laurance asserted that this property was not trust property and that the court lacked jurisdiction. He continued to reject Gay's efforts to communicate with him and work through issues relating to the real property and money owed by Alan to the trust.
¶ 15 By February 2008, the judgments in favor of the minors had still not been satisfied. Gilliam and Gay filed "final" reports emphasizing that neither Alan nor Laurance had ever made a satisfactory accounting and that their ongoing hostility and lack of cooperation made it unlikely that anything further would be accomplished. Gay recommended that Laurance be removed as trustee and that an independent successor trustee be appointed. Gilliam and Gay both petitioned the court to discharge them and to enter judgment making Laurance liable for their fees along with Alan. The court reserved these requests while, in April 2008, approving the reports and ordering Laurance to provide a full accounting. Laurance did provide an accounting of sorts in May 2008, but it did not satisfy the court or the two special appointees. Sanctions were imposed against Laurance, his current counsel was allowed to withdraw, and he was ordered to produce a full accounting on pain of being held in contempt and subjected to more sanctions.
¶ 16 On May 22, 2008, Gilliam filed a petition alleging that Laurance had breached fiduciary duties owed to the minor beneficiaries of the trust:
Laurance Foster, as co-trustee and as sole current trustee, has breached his fiduciary duties to the minor beneficiaries by personally accepting substantial distributions from the probate estate that should have been distributed to the Foster Family Trust, by agreeing that the probate estate could withhold the share of the minors for no known legitimate reason, for deliberately failing to disclose his knowledge of the administration of the probate estate and the distributions to himself and to Lloyd Alan Foster to the court and to Special Administrator, by setting up GET[[11]] accounts that may not be used and may cause damage to the beneficiaries upon reaching age 30 by distributing a minor's trust assets directly to the mother rather than preserving the assets for post high *950 school education or outright distribution at age 30, and by general failure to protect the financial interests of the minors.[[12]]
Gilliam asked the court to remove Laurance as cotrustee, enter a finding that he breached fiduciary duties, and amend the earlier judgments by including Laurance as a judgment debtor for $10,430 for each minor child. Laurance filed an answer denying the allegations and demanding a jury trial.
¶ 17 No action was taken on Gilliam's petition right away because Alan and Laurance purportedly had reached an agreement that would result in funding the minor trusts and paying the fees of Gilliam and Gay. On December 31, 2008, the court entered orders approving such an agreement. The order was approved in form and content by new counsel for Laurance. The court also entered orders discharging Gilliam and Gay, though Gilliam retained limited authority to execute documents on behalf of the minors. Funds to pay the fees of Gilliam and Gay were to come in part from the sale of certain property belonging to the trust, which Laurance was directed to accomplish. Because this task remained to be done, Gilliam and Gay remained involved in the case.
¶ 18 Laurance did not comply with the agreement and Gilliam and Gay did not get paid. Gilliam and Gay filed petitions concerning their fees. Laurance filed a response, again demanding a jury trial on the still-unresolved allegation that he breached fiduciary duties. On June 16, 2009, the court ordered that the fees and costs previously awarded to Gilliam and Gay be reduced to judgments against Alan. The court also removed Laurance as trustee and appointed an interim trustee, who was directed to conduct a forensic accounting of the estate and trust and to determine whether Alan and Laurance had breached their fiduciary duties. However, according to an unchallenged finding, the interim trustee "was unwilling to undertake the assignment due to lack of resources and concerns regarding the cooperation of the former Trustees and Personal Representative."[13] At a review hearing in September 2009, Laurance presented what was represented to be "forensic accounting" by an accountant, but it was based on summaries provided by Laurance and Alan and it did not verify that financial records had actually been reviewed.
¶ 19 The court conducted a final review hearing on November 23, 2009. At the hearing, the court ruled that Laurance breached fiduciary duties owed to the minor trust beneficiaries and that he and Alan were liable to each of the minors in the amount of $10,430.00 as reflected in the earlier judgment against Alan and for fees incurred by Gilliam and Gay. Accordingly, the court amended the previous judgments against Alan by adding Laurance as a debtor with joint and several liability. The effect was to hold Laurance liable to the eight minor beneficiaries for $10,430.00 each and also to make him liable to Gilliam for $40,478.10 and liable to Gay for $50,408.25. These fee awards were for services performed by Gilliam and Gay through December 31, 2008. On January 27, 2010, the court granted additional judgments to Gilliam ($12,775.26) and Gay ($13,902.73) against Alan and Laurance for services performed from January 1, 2009, through November 23, 2009. The record does not inform us about any proceedings that may have occurred with respect to the Foster Estate after the proceedings described above.

ORDERS APPEALED
¶ 20 Laurance asks for review of all the orders entered in this case. Gay argues that Laurance may not obtain review of the order entered on November 23, 2009, that granted Gay a judgment for $50,408.25 because Laurance did not properly designate it as required by the rules of appellate procedure.
¶ 21 A notice of appeal must "designate the decision or part of decision which the party wants reviewed" and a party filing the notice of appeal "should attach to the notice of appeal a copy of the signed order or judgment from which the appeal is made." RAP 5.3(a). However, this court will review an order not designated in the notice "if (1) the *951 order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review." RAP 2.4(b).
¶ 22 Laurance filed a notice of appeal on December 17, 2009. The notice stated that he sought review of an order entered on November 23, 2009, by Commissioner Velategui and all prior rulings in this matter. He attached the order amending the judgments in favor of Gilliam and the minor beneficiaries but not the order entering judgment in favor of Gay. On February 26, 2010, Laurance filed a second notice of appeal, referring to and attaching the two orders entered on January 27, 2010.
¶ 23 Laurance failed to designate the November 23, 2009, order granting Gay a judgment for $50,408.25. Because the exception described in RAP 2.4(b) is not met, we need not review the order. Though the undesignated order is related to the properly designated orders, the judgments entered in favor of Gilliam and the minors can be reviewed without considering the merits of the November 23 judgment in favor of Gay. See Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 105 Wash.App. 813, 819, 21 P.3d 1157 (2001) ("The issues in the two orders must be so entwined that to resolve the order appealed, the court must consider the order not appealed."), remanded, 146 Wash.2d 370, 46 P.3d 789 (2002), cert. denied, 540 U.S. 1149, 124 S.Ct. 1147, 157 L.Ed.2d 1043 (2004). Because the order is not properly before us, we will not review it.

RIGHT TO JURY TRIAL
¶ 24 Laurance contends the commissioner erred by denying his request for a jury trial on the allegation that he breached his fiduciary duty.
¶ 25 At the final review hearing on November 23, Laurance argued that he was entitled to a jury trial because breach of fiduciary duty is a tort.
MR. McREARY (counsel for Laurance): But this is a tort. The question is did Laurance Foster breach his fiduciary duty, if he had one?
COMMISSIONER VELATEGUI: Laurance just got money out of the estate he wasn't entitled to. That's not a tort. It's just a misdirection of the money. He has to give it back. It's as simple as that, by your analysis.[[14]]
¶ 26 "The right of trial by jury shall remain inviolate." WASH. CONST. art. 1, § 21. This provision has been interpreted as "guaranteeing the right to trial by jury as it existed in the territory at the time of the adoption of the constitution." Allard v. Pac. Nat'l Bank, 99 Wash.2d 394, 399, 663 P.2d 104 (1983). Where an action is purely legal in nature, there is a right to a jury trial. Auburn Mech., Inc. v. Lydig Constr., Inc., 89 Wash.App. 893, 897, 951 P.2d 311, review denied, 136 Wash.2d 1009, 966 P.2d 902 (1998). Where an action is purely equitable in nature, there is no right to a jury trial. Auburn Mech., Inc., 89 Wash.App. at 897, 951 P.2d 311. Even if the action is one for money damages, it may be primarily equitable in nature. Allard, 99 Wash.2d at 400, 663 P.2d 104. In determining whether a case is primarily equitable in nature or is an action at law, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse. Allard, 99 Wash.2d at 400, 663 P.2d 104.
¶ 27 This case arises from probate. A probate court is a court of equity. Matter of Drinkwater's Estate, 22 Wash.App. 26, 30, 587 P.2d 606 (1978), review denied, 92 Wash.2d 1001, 1979 WL 71363 (1979); In re Estate of Black, 116 Wash.App. 476, 483, 66 P.3d 670 (2003), aff'd on other grounds, 153 Wash.2d 152, 102 P.3d 796 (2004). The Trust and Estate Dispute Resolution Act gives broad authority to the courts to administer and settle all estate and trust matters. RCW 11.96A.020;[15] RCW 11.96A.060.[16] The *952 right of a party to a jury trial in probate or court of equity is limited. For example, it is well established that there is no right to a jury trial in a will contest. In re Shaughnessy's Estate, 97 Wash.2d 652, 657, 648 P.2d 427 (1982).
¶ 28 Laurance contends the proceeding involved claims against him that were purely legal because breach of fiduciary duty is a tort and Gilliam was seeking money judgments in favor of the minors against him personally. He relies primarily on two cases to support these arguments: Allard, 99 Wash.2d 394, 663 P.2d 104, and Kelly v. Foster, 62 Wash.App. 150, 813 P.2d 598, review denied, 118 Wash.2d 1001, 822 P.2d 287 (1991).
¶ 29 In Allard, beneficiaries of a trust sued the trustee for breach of fiduciary duty. The Supreme Court held that the beneficiaries did not have a right to jury trial because they did not seek personal damages. Instead, they sought to restore funds to the trust. This meant the action was equitable:
The distinction between actions at law and those at equity is based on the nature rather than the form of the proceeding. Even if the action is one for money damages, it may be primarily equitable in nature. Where the beneficiaries seek recovery for themselves personally, the action is considered legal in nature. Where, as in this case, the beneficiaries of a trust sue the trustee in order to restore funds to the trust, the action is considered equitable in nature.
Allard, 99 Wash.2d at 400-01, 663 P.2d 104 (citations omitted).
¶ 30 Allard also held that the plaintiffs were entitled to attorney fees because they successfully established a breach of fiduciary duty by the trustee. Allard, 99 Wash.2d at 407-08, 663 P.2d 104. This was in accord with the American rule that "courts do not award attorney fees unless expressly authorized by contract, statute, or recognized equitable exception." In re Guardianship of Matthews, 156 Wash.App. 201, 212, 232 P.3d 1140 (2010) (emphasis added).
¶ 31 In Kelly, plaintiff Kelly successfully sued Foster for legal malpractice and breach of fiduciary duties and argued that he was entitled to attorney fees under Allard for proving the breach of fiduciary duty. This court disagreed, reasoning that Kelly's claims were legal, not equitable. We distinguished Allard on the basis that the breach of fiduciary claim in that case was equitable while Kelly's was not:
Kelly's claims in this case are not equitable in nature. She claims no equitable remedy. Her action is one to recover damages for herself, a traditional legal remedy. At the outset of the trial, both Kelly and Foster treated the case as an action for legal malpractice. Like many such cases, the basis of liability was a claimed breach of fiduciary duty.
Kelly, 62 Wash.App. at 154, 813 P.2d 598.
¶ 32 Allard and Kelly do not support a conclusion that the proceedings below aimed at establishing Laurance's breach of his fiduciary duty were purely legal in nature. Gilliam was suing to protect the interests of the minor beneficiaries in the trust estate created by Lloyd and Alice Foster, not to obtain damages for them or for herself. We have recognized that claims for breach of trust are equitable in nature. Gillespie v. Seattle-First Nat'l Bank, 70 Wash.App. 150, 173, 855 P.2d 680 (1993), review denied, 123 Wash.2d 1012, 869 P.2d 1084 (1994). This is in accord with the general recognition that a trust *953 beneficiary's remedies "are equitable in origin and depend upon the application of equitable principles." GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 870, at 124 (rev.2d ed.1995). Unlike this case, Allard and Kelly were ordinary civil actions. Neither case was in the context of a probate court attempting to distribute estate and trust assets.
¶ 33 Because this case was equitable in nature, the court did not abuse its discretion by denying Laurance a jury trial.

ESTOPPEL
¶ 34 The court found that Laurance breached his fiduciary duties to the minor beneficiaries in a number of ways, including by "personally accepting substantial distributions from the probate estate that should have been distributed to the Foster Family Trust."[17] The findings entered against Laurance on November 23, 2009, state that the amount Laurance improperly received was $169,000.[18] At the meeting in May 2006, Laurance acknowledged that he had received, at the least, approximately $129,000 from the estate in January 2004. The accounting he provided to the court in September 2009 also acknowledged his receipt of an additional disbursement of $40,900 from the estate.[19] (Gilliam contended that the correct figure may have been as much as $231,300.[20]) These funds should have been distributed to the trust instead going directly to Laurance.
¶ 35 Laurance argues the court was estopped from finding that he breached fiduciary duties by accepting estate funds from Alan in January 2004. He contends that when he received the funds from the estate, he was not actually a trustee because the order appointing him trustee on January 13, 2004, was vacated by the court on August 11, 2004. In his view, he had no duty to breach and was merely accepting the money as part of his inheritance.
¶ 36 Laurance complains that the trial court did not address this issue. While it is true that Laurance pleaded estoppel in his answer to Gilliam's petition, he did not make this argument in his memorandum of law submitted on September 18, 2009, or at oral argument on November 23, 2009. Because Laurance abandoned the issue, he cannot raise it now for the first time on appeal. RAP 2.5(a).
¶ 37 Even on the merits, Laurance's argument fails. In support of his argument, he cites Sutton v. Hirvonen, 113 Wash.2d 1, 775 P.2d 448 (1989). There, the court stated, "`A judgment which has been vacated is of no force or effect and the rights of the parties are left as though no such judgment had ever been entered.'" Sutton, 113 Wash.2d at 9, 775 P.2d 448, quoting In re Estate of Couch, 45 Wash.App. 631, 634, 726 P.2d 1007 (1986). But Laurance fails to show that vacating an order of appointment has the same effect as vacating a judgment.
¶ 38 If Laurance had no power to act as a trustee in the same way that a vacated judgment has no power, all of his actions during this period were null and void. We do not think this is a reasonable interpretation of the effect of the order. The more reasonable conclusion is that the court was merely ending the appointment. In fact, Laurance himself, in a September 2004 letter to Gilliam, asserted that "The judge did not vacate my appointment as Co-Trustee. The judge told me I was `not out' as Co-Trustee.... My appointment as Co-Trustee by my brother is legal and still binding."[21]
¶ 39 We are aware of no authority holding that a person who serves in a fiduciary capacity temporarily after being appointed by an order obtained ex parte, and then is removed from the position, is excused from responsibility for actions taken while he served in the position. Laurance took actions as cotrustee during the period in question. For example, he reviewed an accounting with his brother Alan and accepted the distribution of assets from the estate by *954 Alan. He also involved himself in a real estate matter involving the trust during this period. If not acting as an actual trustee, he was at least acting as a de facto trustee. See In re Irrevocable Trust of McKean, 144 Wash.App. 333, 341-42, 183 P.3d 317 (2008). It was appropriate to hold him responsible for his conduct.

STATUTE OF LIMITATIONS
¶ 40 Laurance pleaded the defense of the statute of limitations in June 2008, contending that the claim of breach of fiduciary duty came too late. During oral argument at the hearing on November 23, 2009, Laurance brought the issue to the court's attention. Commissioner Velategui replied that the claim was still open. Laurance contends the court erred in considering the allegation that he breached his fiduciary duty when it had expired.
¶ 41 Under the statute of limitations Laurance relies on, an action for a breach of fiduciary duty must be brought within three years from the time the breach was discovered or reasonably should have been discovered:
An action against the trustee of an express trust for a breach of fiduciary duty must be brought within three years from the earlier of: (i) The time the alleged breach was discovered or reasonably should have been discovered; (ii) the discharge of a trustee from the trust as provided in RCW 11.98.041 or by agreement of the parties under RCW 11.96A.220; or (iii) the time of termination of the trust or the trustee's repudiation of the trust.
RCW 11.96A.070(1)(a).
¶ 42 It is not clear that this statute of limitations runs against a minor or against a special representative of minors appointed, as Gilliam was, under RCW 11.96A.250, without the power to commence litigation or conduct discovery. Assuming the statute is applicable, however, Gilliam first made the claim on behalf of the minor beneficiaries in May 2008. She asserted that the breach in question occurred on or about January 23, 2004, when Laurance accepted funds from the estate through Alan but did not distribute any of the funds to the minors. While this was over three years before she filed the petition alleging breach of fiduciary duty, the record indicates that Gilliam did not learn about the breach until May 31, 2006, when Laurance finally responded to her numerous requests for information by providing a rudimentary accounting and disclosing receipt of a distribution of $129,000 to himself personally.
¶ 43 Laurance contends that Gilliam or Gay reasonably should have discovered the breach earlier because they could have subpoenaed bank records. We disagree. Laurance was ordered to cooperate with Gilliam and Gay, and they were entitled to assume he would obey a court order. The record reveals that he did not cooperate. Therefore, it cannot be said that the breach should have been discovered earlier. The court did not err in rejecting the defense of the statute of limitations.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
¶ 44 Laurance contends the findings establishing that he breached a fiduciary duty are unsupported. He specifically challenges the following findings entered in an order presented by Gilliam:
4. Lloyd Alan Foster, as former Personal Representative, and as former co-trustee, has breached his fiduciary duties to the minor beneficiaries by failing to properly administer the probate estate, by making direct distributions to himself and to Laurance Foster rather than to the Foster Family Trust, by deliberately failing to report these distributions to the court and to the Special Administrator, by failing to account for a hold back for the minors' share and by failing to protect the financial interests of the minors.
5. Laurance Foster, as co-trustee from January 13, 2004 through August 11, 2004, as co-trustee from January 26, 2005 through August 23, 2006 and as sole trustee from August 23, 2006 through June 16, 2009, has breached his fiduciary duties to the minor beneficiaries by personally accepting substantial distributions from the *955 probate estate that should have been distributed to the Foster Family Trust, by agreeing that the Personal Representative could withhold the share of the minors for no known legitimate reason, for deliberately failing to disclose his knowledge of the administration of the probate estate and the distributions to himself and to Lloyd Alan Foster to the court and to the Special Administrator, and by failing to protect the financial interests of the minors.
6. The lack of candor, lack of cooperation, and outright hostility towards the Special Administrator, Special Representative and the court throughout these proceedings have resulted in astronomical fees in this matter that otherwise would not have been incurred but for the actions and inactions of Lloyd Alan Foster and Laurance Foster.[[22]]
Similar findings were entered in an order presented by Gay.
1.1 LAURANCE E. FOSTER, as co-trustee from January 13, 2004 through August 11, 2004, as co-trustee from January 26, 2005 through August 23, 2006, and as sole trustee from August 23, 2006 through June 16, 2009, has breached his fiduciary duties to the minor beneficiaries by his actions and/or misconduct....
. . . .
1.5 The accounting presented by Laurance E. Foster is the same accounting based upon the incomplete summary of estate and trust assets prepared initially by Lloyd Alan Foster in January 2004 and a summary accounting prepared by Laurance E. Foster in April 2008. The review and comments submitted by Mr. Toyer[[23]] do not present sufficient evidence of a review of underlying documents and records and are not supported by the record previously presented by the Special Administrator and Cynthia Foster.[[24]]
1.6 Over the six years duration of this proceeding, Laurance E. Foster, by his actions and failure to cooperate, has harmed the minor beneficiaries and has caused substantial losses to the various parties' beneficial interests, resulting in substantial professional fees and costs to be incurred in this proceeding.
1.7 In addition to breaching his fiduciary duty as Trustee, Laurance E. Foster is liable to the Trust in the amount of $169,000.00, jointly and severally with Lloyd Alan Foster, which is the amount distributed from the probate estate that he personally received rather than being distributed to the Foster Family Trust. The intent is to make the minor beneficiaries whole.[[25]]
¶ 45 The parties disagree on the standard of review. Washington courts have applied a de novo standard in the context of a purely written record where the trial court made no determination of witness credibility. Dolan v. King County, 172 Wash.2d 299, 310-11, 258 P.3d 20 (2011). And in general, the standard of review is de novo in probate proceedings for decisions based on declarations, affidavits, and written documents. In re Estate of Bowers, 132 Wash.App. 334, 339-40, 131 P.3d 916 (2006). However, our Supreme Court has indicated that even with a purely written record, the substantial evidence standard is more appropriate in cases where the trial court reviewed an enormous amount of documentary evidence, weighed that evidence, resolved inevitable evidentiary conflicts and discrepancies, and issued written findings. Dolan, 258 P.3d at 27.
¶ 46 Given the extensive documentary record in this case, consisting largely of competing court filings spanning years, the substantial evidence standard is appropriate. But *956 even under the de novo standard, we would reach the same result.
¶ 47 Laurance contends there were factual disputes that required oral testimony before the court ruled. The record does not show that he argued, before the court ruled, that oral testimony was necessary. Thus, he has not properly preserved this issue. RAP 2.5(a).
¶ 48 And in any event, the argument is unpersuasive. Laurance cites City of Blaine v. Feldstein, 129 Wash.App. 73, 76, 117 P.3d 1169 (2005). Feldstein is unhelpful. Feldstein was a condemnation case where the defendants argued they were entitled to a testimonial hearing under statute before their property was condemned. Feldstein, 129 Wash.App. at 76, 117 P.3d 1169. This court held that the trial court had discretion to determine if a testimonial hearing was required. Feldstein, 129 Wash.App. at 77, 117 P.3d 1169. A testimonial hearing was required only if the necessary facts to resolve the case were in dispute.
¶ 49 Unlike the appellants in Feldstein, Laurance does not cite a statute to support the argument that oral testimony is required. In fact, the statute outlining the procedural rules for matters decided under the Trust and Estates Dispute Resolution Act, as this matter was, states that "Testimony of witnesses may be by affidavit." RCW 11.96A.100(7). It is not necessary that the court hear oral testimony in order to make findings.
¶ 50 The parties submitted many declarations throughout this case. Our review of the record shows that the findings are supported by substantial evidence. Laurance's argument to the contrary is for the most part too conclusory to merit more extensive analysis.

AMOUNT AWARDED TO THE MINOR TRUST BENEFICIARIES
¶ 51 Laurance makes a cursory argument that the court's entry of judgment for $83,440 in favor of the minors ($10,430 each) was not supported by the evidence. He argues that even if he improperly received funds from the estate that ought to have been distributed to the trust, the total amount for the minors should have been only a 20 percent share of the funds he received an amount that he admitted to be $129,000 and that the court found to be $169,900.
¶ 52 But the minors were entitled to 20 percent of the entire net estate, not just the portion of the estate Laurance took as his personal share of the probate estate. The record indicates that if it had been up to Laurance, each minor would have been given a trust account of no more than $5,000 (and perhaps as little as $400) while Laurance would have retained his entire distributive share.
¶ 53 As the court stated, its objective was to make the minors whole. The court was acting in an equitable capacity. See RCW 11.96A.020. Claims for breach of trust are equitable. We cannot say the relief granted by the court was inequitable or unwarranted. See Gillespie, 70 Wash.App. at 173, 855 P.2d 680. While Laurance was not a personal representative of the estate, his involvement in the estate was substantial. And he did nothing in his capacity as cotrustee to stop Alan from misappropriating the funds. His assertion that he was an innocent bystander and that his brother was solely responsible for misappropriation of estate funds is belied by the record. We conclude the evidence in the record supports the judgment entered in favor of the minors.

ENTERING JUDGMENT AT A REVIEW HEARING
¶ 54 Laurance argues that the court committed reversible procedural error by entering the challenged orders and judgments at a review hearing related to an accounting. Specifically, he contends Gilliam should have noted a motion. Laurance fails to cite any authority or rule to support this argument. An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Arguments that are not supported by any reference to the record or by any citation of authority need not be considered. Cowiche Canyon *957 Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Thus, we do not consider this argument.
¶ 55 Laurance also argues he lacked sufficient notice because the request to hold him liable along with Alan was made only five days before the review hearing. Again, Laurance fails to cite authority. In any event, Laurance was aware since May 2008 that liability was sought against him. We find no merit in this argument.

AWARD OF FEES TO GILLIAM AND GAY
¶ 56 The court held Laurance liable, jointly and severally with his brother Alan, for the costs of having Gilliam and Gay serve as special appointees. A statute authorizes the court at its discretion to grant fees to any party in a proceeding involving probate and trust matters:
Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.
RCW 11.96A.150(1). This court reviews fee awards under this statute for abuse of discretion. Black, 116 Wash.App. at 489, 66 P.3d 670.
¶ 57 Laurance contends the court should have apportioned fees between him and Alan. He argues it is unfair and does not make sense to hold him liable for every minute of time billed by Gilliam and Gay.
¶ 58 Laurance did not make this argument below. Even assuming the issue is not waived, the record supports the court's award. Laurance was obstructive from the beginning. He often refused to cooperate with the court, Gilliam, and Gay. He asserted the estate was closed when it was not. He asserted the court lacked jurisdiction when it did not. Laurance worked in tandem with Alan and supported Alan's actions. For example, in a letter written to Gilliam in September 2004, Laurance admitted "my brother and I discuss everything I do and most of it is at his direction."[[26]] As the court stated in an unchallenged finding of fact, Laurance, "by his actions and failure to cooperate, has harmed the minor beneficiaries and has caused substantial losses to the various parties' beneficial interests, resulting in substantial professional fees and costs to be incurred in this proceeding."[[27]] Because the Foster brothers' actions in the proceeding were intertwined, it was reasonable to hold them jointly and severably liable for the expense of the special appointees. The court did not abuse its discretion.

FEES ON APPEAL
¶ 59 Citing RCW 11.96A.150(1) and RAP 18.1, all three parties ask for attorney fees on appeal. RCW 11.96A.150(1) grants this court discretionary authority to make a fee award. Gilliam and Gay have prevailed. We exercise our discretion to award them fees and costs against Laurance for this appeal. Laurance's request for fees is denied.
¶ 60 Affirmed.
WE CONCUR: APPELWICK and COX, JJ.
NOTES
[1] Clerk's Papers at 767.
[2] Clerk's Papers at 947.
[3] Clerk's Papers at 950-53.
[4] See, e.g., Clerk's Papers at 973 ("My mother would never have approved of all this legal expense. She wanted her money to go to her heirs, not Curran Mendoza PS.").
[5] Clerk's Papers at 1059.
[6] Clerk's Papers at 1199.
[7] Clerk's Papers at 1204-05.
[8] Clerk's Papers at 1212-13.
[9] Clerk's Papers at 1261.
[10] Clerk's Papers at 1417.
[11] GET stands for the Guaranteed Education Tuition program.
[12] Clerk's Papers at 866-67.
[13] Finding of Fact 1.3, Clerk's Papers at 791.
[14] Report of Proceedings at 20 (Nov. 23, 2009).
[15] RCW 11.96A.020 states:

(1) It is the intent of the legislature that the courts shall have full and ample power and authority under this title to administer and settle:
(a) All matters concerning the estates and assets of incapacitated, missing, and deceased persons, including matters involving nonprobate assets and powers of attorney, in accordance with this title; and
(b) All trusts and trust matters.
(2) If this title should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of the matters listed in subsection (1) of this section, the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.
[16] RCW 11.96A.060 states:

The court may make, issue, and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes that might be considered proper or necessary in the exercise of the jurisdiction or powers given or intended to be given by this title.
[17] Clerk's Papers at 789.
[18] Clerk's Papers at 795.
[19] Clerk's Papers at 755-756.
[20] Clerk's Papers at 773.
[21] Clerk's Papers at 1258.
[22] Clerk's Papers at 807-08.
[23] Richard Toyer, a certified public accountant, reviewed documents supplied by Laurance and signed a letter, dated September 2009, opining on the status of the estate and trust. This was part of the "forensic accounting" presented by Laurance.
[24] Cynthia Foster is the daughter of Alan Foster. In a declaration filed with the court in June 2008, she objected to Laurance's accounting and management of the trust: "I do not believe that my uncle Larry's accounting is accurate nor do I believe that his handling of the trust is appropriate." Clerk's Papers at 1588.
[25] Clerk's Papers at 789, 795.
[26] Clerk's Papers at 1258.
[27] Finding 1.6, Clerk's Papers at 791.