IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 75563-3-I |
| WAIRIMU KIAMBUTHI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| TOLL OBUON, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 13, 2017 |

SCHINDLER, J. — Toll Obuon and Wairimu Kiambuthi are parents of 11-year-old M.O. Kiambuthi filed a motion to relocate from Seattle to Snohomish County. The court granted the request. Obuon appeals the final order and findings on objection to relocation. Because the record establishes the court considered each of the statutory relocation factors, we affirm.

Kiambuthi is from Nairobi, Kenya, and Obuon is from Migori, Kenya. Kiambuthi and Obuon began dating in 2004 while living in New York City. Their daughter M.O. was born in 2006. In August 2007, Kiambuthi moved to Seattle with M.O. Obuon remained in New York. Kiambuthi and Obuon married in 2008. Obuon moved to Seattle in March 2009. The parties separated in 2012. In December 2012, Kiambuthi moved with M.O. to Nairobi to work at the World Bank and take care of her father. Kiambuthi and M.O. traveled back to Seattle two times in 2013 to visit Obuon and Kiambuthi's mother.

In December 2013, Kiambuthi and Obuon filed a joint petition for dissolution. The court entered the decree in July 2014. The parenting plan allowed Kiambuthi to return to Nairobi with M.O. indefinitely. But the parenting plan required Kiambuthi to travel to the United States with M.O. to visit Obuon when school holidays were longer than three weeks. Because she needed to stay in Seattle to take care of her mother, Kiambuthi did not return to Nairobi. Kiambuthi taught part-time at Bellevue College.

In November 2014, Kiambuthi met Matthew Sumrell. Sometime in early 2015, M.O. told Obuon about Sumrell. While driving in the car, Obuon asked M.O. about the relationship. M.O. said Obuon slammed on the brakes and she hit her head on the dashboard. Obuon told M.O. to stop calling Sumrell "Daddy Matt." Obuon said he would choke Sumrell if Sumrell ever disciplined M.O. M.O. later told a teacher at church she was afraid to go to Obuon's house and " 'I feel like I wish I was dead.' "

In the fall of 2015, the parties agreed to a "split parenting" arrangement with M.O. staying overnight on Tuesdays and Wednesdays at Obuon's apartment.

Kiambuthi and Sumrell married around December 2015. Kiambuthi filed a motion to relocate M.O. from Seattle to Snohomish County near Bothell and to modify the parenting plan to allow M.O. to live in Snohomish during the school week. Obuon objected to the motion for relocation and requested the court enter a "50/50 parenting plan." The court granted the request to relocate temporarily to Snohomish County. Kiambuthi, Sumrell, and M.O. moved on June 9, 2016.

The three-day trial began on July 18, 2016. Kiambuthi and Obuon represented themselves pro se. Kiambuthi stipulated to the admission of exhibits. Several witnesses testified, including Kiambuthi, Obuon, Sumrell, and Pastor Dan Johnson.

Kiambuthi testified she "put great consideration for [M.O.]" in determining where to relocate. Kiambuthi said the public school M.O. will attend in the fall is a "nine-out-of-ten score." M.O. would be entering the fifth grade and is "going to be tested to see whether she's highly capable" and eligible for a gifted program. Kiambuthi testified Obuon lacked "consistency in some of [M.O.'s] homework" and when M.O. returned from visits with Obuon, "homework would be lost."

Kiambuthi testified that after Obuon learned of her relationship with Sumrell, co-parenting was "impossible." Obuon became "fixated on what was going on in my home" and "put extreme pressure on [M.O.] to extract information." Kiambuthi said that M.O. was afraid of Obuon, that she would return home in tears, and that she was "overly fearful" of upcoming visits.

Sumrell testified M.O. cried after returning from staying with Obuon. M.O. told Sumrell, " 'Please don't send me back. I don't want to go back. I'm afraid of my father, I'm afraid of my daddy.' "

Obuon testified M.O.'s private school in Seattle is a "very good school" and he wanted M.O. to remain enrolled there. Obuon said Kiambuthi organizes M.O.'s medical appointments, education, and social activities, and said he "left most of those things to [Kiambuthi]." Obuon said he allowed M.O. to live in Nairobi with Kiambuthi from 2012 to 2014 because the child is "much better . . . being closer to the mother." Obuon agreed to the original parenting plan that allowed M.O. to live in Kenya because Kiambuthi would "be coming back and forth."

Dan Johnson testified he is the pastor at the church Kiambuthi and Obuon attended. Johnson observed the family interact in their home "a number of times." Johnson said Kiambuthi has a "very loving, encouraging relationship" with M.O. Johnson

testified he did not notice any discord between Obuon and M.O. and M.O. seemed "safe with her dad."

The court found Kiambuthi and Obuon "both care very deeply" for M.O. but recognized the "presumption that the party asking to relocate is granted the relocation." The court found relocation to Snohomish County is not a "significant change" because Kiambuthi's new residence is not far from Seattle and "not more than five miles from Bothell." The court found M.O. will have "a much more stable home base for schooling, and for . . . her development," if she relocates with Kiambuthi to Snohomish County. The court also noted Obuon could move "to be closer to the child."

After granting the request to relocate, the trial court addressed the parenting plan "to see if the parenting plan should change." The court amended the parenting plan to allow M.O. to live with Kiambuthi in Snohomish during the school week and visit Obuon every other weekend.

The court entered a final order and findings on relocation and an amended parenting plan.

Appeal

Obuon appeals the final order and findings on relocation. Obuon also argues on appeal the court erred by entering the amended parenting plan. But the notice of appeal designates and attaches only the final order and findings on relocation. Obuon did not designate the amended parenting plan. A notice of appeal must designate the decisions the party wants reviewed. RAP 5.3(a)(3).

We will review an order not designated in the notice of appeal if "the order or ruling prejudicially affects the decision designated in the notice." RAP 2.4(b)(1). An order prejudicially affects the decision designated where the order "would not have happened

4

but for" the undesignated order. Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 378-80, 46 P.3d 789 (2002) (citing Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 134-35, 750 P.2d 1257, 756 P.2d 142 (1988)); Franz v. Lance, 119 Wn.2d 780, 782, 836 P.2d 832 (1992)).

The record shows the court did not amend the parenting plan until after granting the motion to relocate. The merits of the order on relocation can be reviewed without considering the amended parenting plan. Because the amended parenting plan did not prejudicially affect the relocation order, we decline to review the amended parenting plan. See In re Estates of Foster, 165 Wn. App. 33, 45, 268 P.3d 945 (2011) (declining to review related undesignated order because the designated order can be reviewed without considering the merits of the undesignated order).

We also note that under RAP 9.6(b)(1)(D) and (F), the party seeking review must include as part of the record on appeal any written orders and findings of fact and conclusions of law. The record does not include the amended parenting plan or the related parts of the record. Failure to provide an adequate record precludes appellate review. Olmsted v. Mulder, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993).

Relocation

Obuon argues the trial court abused its discretion by failing to consider the statutory relocation factors under RCW 26.09.520.

We review the trial court decision to grant relocation for abuse of discretion. In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). Under the child relocation act (CRA), RCW 26.09.405 through .560, "[t]here is a rebuttable presumption that the intended relocation of the child will be permitted." RCW 26.09.520. To rebut the presumption, the parent must demonstrate "the detrimental effect of the relocation

outweighs the benefit of the change to the child and the relocating person." RCW 26.09.520. To "ensure that trial courts consider the interests of the child and the relocating person within the context of the competing interests and circumstances required by the CRA," the court "must consider each of the child relocation factors" in RCW 26.09.520. Horner, 151 Wn.2d at 895.[1] But the factors are "not weighted" or listed in any particular order. RCW 26.09.520; Horner, 151 Wn.2d at 894. The trial court must enter specific findings on each factor in RCW 26.09.520, or the parties must have presented "substantial evidence on each factor with the trial court making findings and oral articulations that reflect its consideration of each." In re Marriage of McNaught, 189 Wn. App. 545, 556, 359 P.3d 811 (2015).

Here, the order and findings on relocation address each statutory relocation factor and substantial evidence supports those findings.

---

[1] The factors the court must consider are:

    (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

    (2) Prior agreements of the parties;

    (3) Whether disrupting the contact between the child and the person with whom the child resides a majority of the time would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

    (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191;

    (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

    (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

    (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

    (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

    (9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;

    (10) The financial impact and logistics of the relocation or its prevention; and

    (11) For a temporary order, the amount of time before a final decision can be made at trial.

RCW 26.09.520.

The findings address "[t]he relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life," and the court found factor one weighs in favor of relocation.[2] When Kiambuthi and M.O. lived in Kenya, Obuon had limited contact with the child. After returning to Seattle, M.O. spent two days a week with Obuon. The unchallenged findings show Kiambuthi has a "very loving, encouraging relationship" with M.O. and M.O. seemed "safe with [Obuon]."

The court found factor two did not apply because there were no "[p]rior agreements" between the parents about moving with M.O.[3] In considering factor three, the court found disrupting contact between M.O. and Kiambuthi "would be more detrimental" to M.O. than disrupting contact between M.O. and Obuon.[4] There is no dispute that Kiambuthi has been the primary caregiver and is "extremely involved in every aspect of parenting."

As to factor four, the court found the original parenting plan did not impose limitations under RCW 26.09.191.[5] The court found the reasons for seeking relocation and the reasons opposing relocation were made in "good faith" under factor five.[6]

Factor six addresses "[t]he age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child."[7] The court found M.O. "will have a stable home-base for her schooling and be able to develop consistent social and extra-curricular contacts." By contrast, the court

---

[2] RCW 26.09.520(1).
[3] RCW 26.09.520(2).
[4] RCW 26.09.520(3).
[5] RCW 26.09.520(4).
[6] RCW 26.09.520(5).
[7] RCW 26.09.520(6).

7

found if M.O. did not relocate, she "would spend a great deal of time traveling from her father's home to school which would negatively affect her educational and social development." The evidence shows the school M.O. will attend in Snohomish County has a program for highly capable students and M.O. is involved in a number of community activities.

The court found factor seven, "[t]he quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations," weighed in favor of relocation.[8] Although the communities were equal, the court found Obuon "would not be able to provide the quality of home environment available in [Kiambuthi]'s home."

In addressing "[t]he availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent," the court found the parenting plan allows for "reasonable contact" with Obuon.[9] The new home is "not more than [5] miles from Bothell," less than 30 miles from Seattle, and M.O. will visit Obuon on alternate weekends.

The court considered "[t]he alternatives to relocation and whether it is feasible and desirable for the other party to relocate also."[10] The court found this factor weighed in favor of relocation because it is possible for Obuon to move closer. The court also noted Kiambuthi's relocation is not a "significant change."

---

[8] RCW 26.09.520(7).
[9] RCW 26.09.520(8).
[10] RCW 26.09.520(9).

Finally, as to "[t]he financial impact and logistics of the relocation or its prevention," the court found the cost is "limited to increased travel costs because the parties live farther away from each other. Travel costs are shared [and] roughly equal."[11]

Because the court considered and addressed all of the relocation factors under RCW 26.09.520, the court did not abuse its discretion in granting Kiambuthi's request to relocate to Snohomish, and we affirm.

WE CONCUR:

---

[11] RCW 26.09.520(10). The court did not need to address factor 11, relating to "a temporary order." RCW 26.09.520(11).