# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

3320 MLK, LLC, a Washington limited
liability company; CARL RAYMOND
HAGLUND, a single person;
COLUMBIA CITY CONDOS #1, LLC, a
Washington limited liability company;
4532 S. HENDERSON, LLC, a
Washington limited liability company;
2023 24th AVE, LLC, a Washington
limited liability company; CLAREMONT
PROPERTIES, LLC, a Washington
limited liability company; COLUMBIA
CITY CONDOS-OWAHE, LLC, a
Washington limited liability company;
COLUMBIA CITY CONDOS-KENNY,
LLC, a Washington limited liability
company; COLUMBIA CITY CONDOS-
CORAL REEF #1, LLC, a Washington
limited liability company; COLUMBIA
CITY CONDOS-CORAL REEF #2,
LLC, a Washington limited liability
company; MY BIG CHINESE
ROOSTER INVESTMENT COMPANY,
LLC, a Washington limited liability
company; BIG ROOSTER
INVESTMENTS, LLC, a Washington
limited liability company; COLUMBIA
MODERN LIVING, LLC, a Washington
limited liability company; I STREET
LLC, a Washington limited liability
company; SEWARD PARK, LLC, a
Washington limited liability company;
2910 S. BYRON, LLC, a Washington
limited liability company; 3320 MICRO,
LLC, a Washington limited liability
company; 3948 FARRAR, LLC, a
Washington limited liability company;
5949 36, LLC, a Washington limited
liability company; and 5002 ROSE,

No. 81406-1-I

DIVISION ONE

UNPUBLISHED OPINION

LLC, a Washington limited liability company,

Appellants,

v.

HELSELL FETTERMAN, LLP, a Washington limited liability partnership; and BRANDON S. GRIBBEN, individually and on behalf of the marital community comprised of BRANDON GRIBBEN and JANE DOE GRIBBEN,

Respondents.

APPELWICK, J. — Haglund appeals the summary judgment dismissal of his claims for breach of fiduciary duty and legal malpractice against Gribben and Helsell Fetterman. Haglund argues Gribben breached the duty of care owed to Haglund as a client by providing inadequate counsel at trial and failing to timely file a supersedeas bond posttrial. We affirm.

FACTS

On April 11, 2016, in the underlying litigation to this matter,[1] Pacific 5000 LLC sued Carl Haglund and his company, 3320 MLK LLC.[2] Pacific 5000 was the debtor on a bank loan Haglund purchased. Pacific 5000 alleged that after it stopped making loan payments in furtherance of an agreement to sell the building to Haglund, he reneged and foreclosed on the loan. It further alleged that Haglund

_____

[1] Pacific 5000, LLC v. 3320 MLK, LLC, No. 16-2-06880-0 (Pierce County Super. Ct., Wash.).

[2] The matter on appeal concerns a legal malpractice suit and the underlying Pacific 5000 litigation giving rise to that suit. When referring to the matter on appeal, appellants Haglund and his 19 LLCs are referred to collectively as "Haglund." When referring to the underlying Pacific 5000 litigation, the defendants in that case, Haglund and 3320 MLK, LLC, are also referred to collectively as "Haglund."

2

engaged in illegal acts to manipulate the bid price, including trespassing onto the property and committing intentional waste of the electrical system.

On October 14, 2016, Haglund's initial attorney withdrew from the case. On October 31, 2016, Brandon Gribben of Helsell Fetterman LLP, entered his formal appearance as counsel for Haglund. This was also the due date for Haglund's primary witness disclosures. That afternoon, Gribben sent an e-mail to opposing counsel stating,

> Attached is a courtesy copy of my notice of appearance, which will be filed with the court shortly. I noticed that the disclosure of primary witnesses is due today and I am requesting a one week extension while I get caught up to speed on the case. I hope to be in touch early next week once I have had a chance to review the documents.

On November 2, 2016, opposing counsel rejected the request. Gribben also moved twice to continue the trial date, but was unsuccessful in both efforts. On November 23, 2016, Gribben filed the now tardy primary witness disclosure. In January and February 2017, Haglund informed Gribben of several new witnesses.

On March 3, 2017, the trial court entered partial summary judgment in favor of Pacific 5000 on its claim of intentional trespass. The issue of the amount of damages proximately caused by the trespass remained for trial.

On March 30, 2017, Pacific 5000 filed a motion in limine addressing several issues, including the exclusion of 15 defense witnesses as not timely disclosed. The court excluded 10 of the 15 witnesses. The trial court's order on motions in limine also excluded many of the exhibits Haglund offered. It ruled the documents were irrelevant, misleading, and/or unfairly prejudicial.

3

On April 19, 2017, Pacific 5000 filed its final amended complaint that included claims of fraud, breach of contract, violation of the Consumer Protect Act, ch. 19.86 RCW, slander of title, declaratory judgment, restitution/unjust enrichment, interference with contractual relations, civil conspiracy, trespass, and waste. The case proceeded to trial.

On June 6, 2017, the trial court sent the parties an outline of the court's decision. On June 29, 2017, the trial court entered findings of fact and conclusions of law and a judgment in favor of Pacific 5000 and against Haglund in the amount of $1,148,034.43. It concluded that Pacific 5000 was damaged in a complete loss of its $313,447.21 equity in the property under multiple theories. The court awarded treble the damages for the trespass, under RCW 4.24.630, and for restraint of trade, under RCW 19.86.030, and awarded attorney fees. The court agreed with Pacific 5000's analysis concerning its other causes of action. However, the court did not allow double recovery under multiple legal theories and stated that its alternative damages for loss of equity measured from the foreclosure sale would be less than the trespass damages.

On Friday July 7, 2017, Haglund obtained a supersedeas bond in the amount of $1,525,000.00 to prevent execution on judgment.[3] Later that day, he delivered the supersedeas bond to Gribben to file with the Pierce County Superior Court. Gribben acknowledged receipt of the bond in an e-mail to Haglund and

---

[3] CR 62(a) provides an automatic stay on the execution or enforcement of a judgment until 10 days after its entry. The limited liability company statute authorizes judgment creditors to obtain a charging order constituting a lien against a judgment debtor's transferrable interests for the unsatisfied amount of the judgment with interest. RCW 25.15.256(1), (2).

informed him that he would file the bond "first thing Monday morning." Haglund believed the bond needed to be filed either July 7, 2017 or by Monday, July 10, 2017 to avoid execution of the judgment. Gribben admits that he understood that if a bond did not get filed, execution on the judgment could proceed. Gribben did not file the supersedeas bond on Monday, as promised.

On July 10, 2017 Gribben filed a motion for reconsideration. In this motion, Gribben argued that Haglund had not caused the vandalism to Pacific 5000's building. He argued there was newly discovered evidence demonstrating that Haglund did not damage the electrical wiring to the building or otherwise cause waste. Gribben presented the court with a declaration from Haglund and documentation to show that the vandalism predated Haglund's trespass onto the site.

The next day, on July 11, 2017, Pacific 5000 obtained a charging order against 17 of Haglund's limited liability companies (LLCs). In this order, the court found the judgment against Haglund was unpaid. It restricted the business activities of the LLCs owned by Haglund as follows:

> [U]ntil such judgment is satisfied in full, including interests [sic] and costs, that none of said limited liability companies, their members or their managers shall undertake, enter into, or consummate any sale, encumbrance, hypothecation or modification of any membership interest of the Judgment Debtors without court approval or approval of the Judgment Creditors herein.

And, it ordered,

> [E]ach of the companies affected by this order are directed to pay any and all distributions, credits, draws or payments owing by such companies to either of the Judgment Debtors into the registry of the court.

Gribben filed the supersedeas bond with the trial court on July 12, one day after the charging order went into effect. Gribben contacted opposing counsel to confirm that there was a stay on enforcement of the judgment. Gribben informed Haglund that opposing counsel agreed to stay the enforcement of the judgment.[4]

On August 2, 2017, Haglund called another attorney at Helsell Fetterman and left a voicemail message indicating he would be filing a malpractice claim against Gribben. The managing partner at Helsell Fetterman contacted Haglund on August 3, 2017, disclosing that Haglund's allegation of malpractice created a conflict of interest and letting him know, if he did not waive the conflict, the firm would have to withdraw as his attorneys in the lawsuit. On August 16, 2017, Stephanie Bloomfield and Robert Wilke, attorneys with Gordon Thomas Honeywell LLP, substituted into the case to replace Gribben as Haglund's counsel.

On August 17, 2017, Haglund, through Bloomfield, moved to set aside the judgment under CR 60. Haglund alleged that Gribben had been grossly negligent in failing to produce "key documents and witnesses." He argued that had these records been produced, they would have corroborated his assertion the premises were vandalized prior to his trespass. The motion was set to be heard along with the motion for reconsideration.

On August 25, 2017, the court denied Haglund's July 10 motion for reconsideration, finding that Haglund's declaration did not contain new evidence not in his possession before trial. It also concluded that "if the evidence in Mr.

---

[4] In a later deposition related to this matter, Haglund confirmed that he could not recall if Pacific 5000 took any other steps to collect the judgment.

Haglund's declaration were admitted, it would not alter the court's findings of fact and conclusions of law."

On September 14, 2017, Haglund appealed a number of orders and the final judgment in the matter.

In Haglund's motion to vacate the charging order, dated February 14, 2018, he alleged it was interfering with real estate transactions involving his other LLCs. Haglund also contended that the title insurer was unwilling to deposit funds from these transactions into the registry of the court, even though the charging order provided that it must do so.

On March 26, 2018, the parties stipulated to discharging the supersedeas bond contingent on Haglund's agreement to satisfy the judgment and to dismiss his appeal. On April 10, 2018, counsel for the parties stipulated that all the issues in this matter were fully settled and the appeal should be dismissed.

Haglund filed suit for legal malpractice and breach of fiduciary duty against Gribben and Helsell Fetterman LLP (collectively Gribben), on May 15, 2019. On January 10, 2020, Gribben moved for summary judgment, arguing "(1) Mr. Haglund cannot meet his burden of proving proximate cause under either legal theory, and (2) as a matter of law Mr. Haglund is not entitled to disgorgement of attorney fees." The same day, Haglund moved for partial summary judgment on liability. On February 24, 2020, the trial court granted Gribben's motion and denied Haglund's.

Haglund and his 19 LLCs appeal.

DISCUSSION

Haglund argues the trial court erred in dismissing both his professional negligence and his breach of fiduciary duty claims against Gribben. First, he argues Gribben committed malpractice during the trial by failing to disclose witnesses in a timely manner and by failing to investigate and produce evidence regarding the cause of the extensive damage inside Pacific 5000's building. He argues Gribben committed malpractice posttrial when he failed to timely file the supersedeas bond, causing Haglund to incur damages. Next, he argues that Gribben owed a fiduciary duty to Haglund, that breach of that duty was a question for the jury, and that he was entitled to seek disgorgement of attorney fees as a remedy for this breach. He asserts this court should reverse the order on summary judgment and remand the case to the trial court.

We review summary judgment orders de novo. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000). We consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c); Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). A material fact is one on which the outcome of the litigation depends, either in whole or in part. VersusLaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005).

I. Legal Malpractice

To establish a claim of legal malpractice, a plaintiff must show (1) the existence of an attorney-client relationship giving rise to a duty of care to the client, (2) an act or omission in breach of the duty, (3) damages to the client, and (4) proximate causation between the breach and damages. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 863-64, 147 P.3d 600 (2006).

Gribben moved for summary judgment based in part on a lack of evidence of proximate causation. General principles of causation are no different in a legal malpractice action than in an ordinary negligence case. Versuslaw, 127 Wn. App. at 328.

Proximate cause is composed of two distinct elements: (1) cause in fact and (2) legal causation. Fabrique v. Choice Hotels Int'l, Inc., 144 Wn. App. 675, 683, 183 P.3d 1118 (2008). Cause in fact refers to the "but for" consequences of an act, or the physical connection between an act and the resulting injury. Id. In a legal malpractice case, the first question is whether the client's case was lost or compromised by the attorney's alleged negligence. Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 777, 432 P.3d 821 (2018), review denied, 193 Wn.2d 1006, 438 P.3d 119 (2019). The second question is whether the client would have fared better but for the attorney's mishandling of the claim. Id. Legal causation rests on policy considerations as to how far the consequences of a defendant's acts should extend and involves a determination of whether liability should attach as a matter of law given the existence of cause in fact. Fabrique, 144 Wn. App. at 683. Both elements must be satisfied. Id.

9

Proximate cause may be determined as a matter of law only when reasonable minds could reach but one conclusion. Tae Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 203, 15 P.3d 1283 (2001).

A. Defense at Trial

Haglund alleges that Gribben committed malpractice by failing to properly defend him in the Pacific 5000 litigation. He alleges Gribben failed to properly investigate and produce certain physical evidence, to make an offer of proof, and to produce and timely disclose certain witnesses relating to the cause of the physical damage to Pacific 5000's apartment building.

The trial court made these findings with regard to the statutory trespass claim:

> 44. . . . HAGLUND proceeded, on his own, to enter the property a second time. Therefore, during the week of May 25, 2015, HAGLUND went into the building alone, forced his way through the security fence, removed boards from one of the entry ways, and entered the building.
> 45. Once inside the building, HAGLUND intentionally sabotaged the electrical system of the building by going from room to room, and cutting holes in the ceiling of each room and severing electrical conduits supplying electricity to several separate apartment units. An interior hallway does not serve the apartment complex. Therefore, to accomplish this sabotage, HAGLUND cut holes in the drywall between apartment units so that he could gain access to further units, and commit widespread damage.
> 46. HAGLUND also severely damaged several electrical panels located in a utility room that served all the apartment units. At no point did HAGLUND ever receive permission from the owner of the property to enter it.

Haglund relied upon Bloomfield as his expert to establish his prima facie case. Bloomfield's declaration provided support for the contention that Gribben's malpractice led him to incur financial losses at trial that he would not have incurred

but for the claimed malpractice.[5]  But, Bloomfield's opinions focused on the alleged breach of a duty of care, rather than cause in fact.  She asserted,

> Gribben fell below the standard of care when he failed to properly investigate his clients' claims and defenses, develop those defenses and the evidence needed to support Haglund's positions in the litigation, and ensure that the evidence supporting the [sic] Mr. Haglund's defense (including identifying witnesses and documents) was properly disclosed in discovery and included in Haglund's trial exhibits and witness list.  Gribben further fell below the standard of care when he failed to create an adequate record for review with offers of proof as to the specific content of any evidence that had been excluded in error.

Bloomfield also testified that other potential witnesses could have spoken to what she called a "critical evidentiary issue" in the case—that the building was already "derelict"—to rebut charges Haglund had committed waste or vandalized the building.  She named "key witnesses" such as "Keith Williams and Richard Boyce."  But, Bloomfield's declaration stopped short of providing an expert opinion on proximate causation in fact.

And, much of the evidence regarding preexisting building damage that Haglund accuses Gribben of not putting before the court was placed before the court in support of Haglund's motion for reconsideration (filed by Gribben) and his motion to set aside judgment (filed by Bloomfield).  Haglund contends that the "key witnesses" could have testified that the extensive damage inside Pacific 5000's

---

[5] In 2018, Bloomfield succeeded Gribben in representing Haglund.  In June 2019, Bloomfield was retained to provide expert testimony relating to Gribben's representation in the Pacific 5000 litigation.  In her declaration, she discussed her opinions on that representation as well as her own understanding of the timeline from her time as Haglund's attorney.

building predated Haglund's trespass in late May 2015.[6]  In his motion to set aside judgment, he also referred to a failure to produce witnesses and "key documents" primarily addressing vandalism.  These documents included photographic evidence that Haglund alleged confirmed that the poor condition and vandalism predated his trespass.

In his motion for reconsideration, he asserted that the totality of new evidence and exhibits in the motion proved that Haglund did not damage the electrical wiring or otherwise cause waste.  His evidence included photographs of the property taken by the bank and by Haglund, as well as the City of Tacoma's documents indicating the property had been vandalized.  The motion for reconsideration also pointed to the exclusion of witnesses mentioned in the motion to set aside judgment, such as Scott Whaley.

The court rejected Haglund's assertions that these exhibits or the additional witnesses would have changed the outcome.  It found that "if the evidence contained in Mr. Haglund's declaration were admitted, it would not alter the court's findings of fact and conclusions of law."  The trier of fact made it clear that the outcome would have been the same on the trespass claim whether or not Gribben had acted negligently in the manner alleged.

For these reasons, Haglund failed to make a prima facie showing that any breach of the standard of care in the presentation of evidence at trial was a cause in fact for his alleged damages.

---

[6] In his August 17, 2017, motion to set aside judgment, Haglund acknowledged that his first counsel's withdrawal "was the sole cause of the delay in filing the disclosure of the witness list."

B. Posttrial Supersedeas Bond

Haglund argues Gribben committed malpractice when he failed to timely file a supersedeas bond, resulting in a charging order issued against 17 of his LLCs.[7]

A supersedeas bond is a means of staying enforcement of a trial court judgment while on appeal. RAP 8.1(a); Guest v. Lange, 195 Wn. App. 330, 338, 381 P.3d 130 (2016). When a supersedeas bond is filed, the judgment cannot be enforced. Lange, 195 Wn. App. at 338. "'The effect of a supersedeas is to preserve the status quo, stay proceedings; it does not reverse or undo what has already been done.'" Brown v. Gen. Motors Corp., 67 Wn.2d 278, 288, 407 P.2d 461 (1965) (emphasis omitted) (quoting Lowe v. N.B. Clark & Co., 150 Wash. 267, 273, 272 P. 955 (1928)). Under CR 62(a), a party may not seek to enforce a judgment until the expiration of 10 days after its entry. This 10 day automatic stay period allows the judgment debtor time to make arrangements to delay enforcement, such as the filing of a supersedeas bond. RAP 8.1; CR 62(a).

The charging order against a member of a limited liability company is statutorily authorized by RCW 25.15.256. On application of a judgment creditor of a member or transferee, a court may charge the transferable interest of the

---

[7] Haglund argues that, although Gribben did not represent 18 of the 19 LLCs listed in the complaint, a duty to them should be imposed. Whether a duty was owed to third parties in such cases is evaluated under the six-part balancing test announced in Trask v. Butler, 123 Wn.2d 835, 842-43, 872 P.2d 1080 (1994). The threshold question is the extent to which the transaction was intended to benefit the third-party plaintiff. Id. Haglund has not satisfied this threshold question. He has not provided sufficient evidence that Gribben was aware of his other LLCs or intended his counsel to benefit them as entities. But, there is a separate question as to whether Haglund incurred personal losses from the delay of the bond and alleged failure of LLC transactions, which we analyze.

judgment debtor to satisfy the judgment. RCW 25.15.256(1). The charging order constitutes a lien on the judgment debtor's transferable interest, which may be foreclosed. RCW 25.15.256(2). The transferable interest of a member of a limited liability company is also subject to a charging order, which gives a judgment creditor the rights of a transferee. RCW 25.15.256. A person is dissociated as a member of a limited liability company upon the transfer of all of the member's transferable interest in the LLC. RCW 25.15.131(1)(b).

Haglund gave Gribben the supersedeas bond within the 10 day window to stay execution of judgment. Gribben did not recall why the supersedeas bond was not filed prior to July 12, 2017. But, the day before it was filed, Pacific 5000 obtained a charging order against 17 of Haglund's LLCs.

Had Gribben filed the supersedeas bond July 10, he could have prevented the charging order from being effective when filed. The question is whether this inaction was the proximate cause of damages to Haglund. See Smith, 135 Wn. App. at 864. Gribben took steps to mitigate any potential harm from the delay in filing the supersedeas bond the following day by securing the agreement of opposing counsel to not execute on the judgment. Haglund confirmed that he could not recall any other steps being taken towards collection that would have violated that agreement.

But, Haglund asserts that the charging order prevented the LLCs subject to it from closing any pending or proposed real estate transactions and interfered with his business interests. To support this assertion, he cites to Bloomfield's declaration in support of partial summary judgment in this matter, his motion to

14

vacate the charging order in the underlying matter, and his own declaration in support of his motion to vacate the charging order.

Haglund's declaration stated that the title insurer involved in the alleged transactions, Fidelity National Title Group, would not allow the deals to close and would not disburse funds because of the charging order against the LLCs. He provided a copy of his January 15, 2018 personal financial statement representing his current net worth as an exhibit attached to the declaration. He claims that Fidelity was unwilling to deposit funds into the registry of the court or otherwise permit closing absent either the agreement of the plaintiff or an order vacating the charging order or expressly allowing the closing to go forward. Plaintiff's counsel did not agree to any of the proposals offered by Haglund's counsel. In February 2018, Haglund moved to vacate the charging order. The trial court ordered the bond discharged based on the stipulation of parties.

Bloomfield's declaration repeated the assertion that in late 2017, Haglund had real estate transactions involving his LLCs that he wished to close, but that he was unable to do so because of the charging order. She further opined that as a result, Haglund had no reasonable choice but to forego his appeal and pay the judgment so as not to lose the deals he had negotiated.

Haglund and his expert were clear that he settled the case and dismissed his appeal to avoid losing the sales he had negotiated. But, he has not offered evidence of any financial losses caused by the charging order applied to those sales or his other LLC interests. His remaining alleged harm relates to his loss of opportunity to do better on appeal.

C. Loss of Opportunity to Appeal

The trial court rested its award in the Pacific 5000 case on several alternative legal claims, not just the trespass claim. The court found Haglund liable for fraud, breach of contract, violations of the CPA, slander of title, tortious interference with business relationships, civil conspiracy, trespass, and waste under RCW 64.12.020. It valued Pacific 5000's damages as the loss of equity it had in the building as of May 2015, in the amount of $313,447.21. It trebled this award under RCW 4.24.630 based on Haglund's intentional trespass, but also trebled the award under RCW 19.86.090 based on Haglund's conspiracy in restraint of trade.

Haglund asserts that Gribben's malpractice caused the trial court to exclude evidence that would have changed the outcome. But, the evidence at issue related primarily to the trespass claim. The court found Haglund conspired in restraint of trade with Fife Commercial Bank, Pacific 5000's lender. It also found Haglund conspired in restraint of trade with his former attorney, Tom Linde, to artificially drive up Pacific 5000's debt, for sale purposes. These conspiracies each "proximately caused the Plaintiff's damages through a loss of equity" in the building. Even if the court had admitted the evidence of preexisting damage to Pacific 5000's building and had found Haglund did not intentionally sabotage the electrical system or cut holes in the drywall, this evidence would not have affected any of the court's factual findings on the restraint of trade claim. Even if judgment on the trespass claim was vacated, the court still would have found that Haglund caused Pacific 5000's loss of equity in the building and that the loss should be

16

trebled under RCW 19.86.090 based on Haglund's conspiracies in restraint of trade.

Haglund failed to demonstrate he would have materially bettered his position on appeal but for Gribben's alleged malpractice during or after trial. For this reason, he has not established that he was damaged by loss of opportunity on appeal.

We hold that the trial court did not err in dismissing Haglund's claim for legal malpractice on summary judgment.

II. Breach of Fiduciary Duty

Next, Haglund argues the court erred in dismissing his claim for breach of fiduciary duty as a matter of law. To prevail on a breach of fiduciary duty claim, a plaintiff must prove (1) the existence of a duty owed, (2) a breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury. Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002).

Pursuant to its power to regulate the practice of law within Washington, Washington courts adopted the Rules of Professional Conduct (RPCs). Hizey v. Carpenter, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). Although the RPCs are not designed to be a basis for civil liability,[8] a trial court may properly consider them in an action by a client for the attorney's alleged breach of fiduciary duties. See Eriks v. Denver, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992). Whether an attorney's conduct violates the RPCs is a question of law. Id. at 457-58. Whether an attorney

---

[8] RPC Scope cmt. 20.

has breached his fiduciary duty to a client is also a question of law. Id. at 457. So, we review the breach of fiduciary duty claim de novo. See Stone v. Sw. Suburban Sewer Dist., 116 Wn. App. 434, 438, 65 P.3d 1230 (2003) (questions of law are reviewed de novo).

Haglund argues Gribben breached two fiduciary duties owed to a client, (1) the duty related to conflicts of interest under RPC 1.7, and (2) the duty of competence under RPC 1.1.

RPC 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interests exists if there is a significant risk that the representation of one or more clients will be materially limited by a personal interest of the attorney. RPC 1.7(a)(2). Haglund argues Gribben had a conflict of interest requiring disclosure on March 30, 2017, when Pacific 5000 served its motion in limine to exclude evidence and witnesses for untimely disclosure. Haglund has not made a prima facie showing that Gribben breached any duty related to the exclusion of evidence and witnesses. Thus, no conflict of interest arose from his conduct relative to the evidence and witnesses.

In support of his claim under RPC 1.1, Haglund argues that Bloomfield's testimony was sufficient to create a question of fact as to Gribben's breach of fiduciary duty. He points to her testimony on Gribben's trial conduct and the filing of the supersedeas bond. Haglund provided evidence that posttrial, Gribben failed to timely file the supersedeas bond. Bloomfield's testimony addressed his violation of the standard of care, but it did not address causation, it likewise does not create

18

a question of fact as to that issue. Just like his malpractice claim, his breach of fiduciary duty claim suffers from the absence of prima facie evidence of proximate causation of any damages.

We hold the trial court did not err in dismissing Haglund's claim for breach of fiduciary duty.

Fee disgorgement is an equitable remedy separate from the legal claim for breach of fiduciary duty. Bertelsen v. Harris, 537 F.3d 1047, 1057 (9th Cir. 2008) ("Under Washington law, disgorgement of fees is a remedy."); Eriks, 118 Wn.2d at 462-3 (affirming a trial court order to return all fees where it had not found the attorney committed malpractice). A breach of ethical duties may warrant a disgorgement of attorney fees independent of proof of damages. Eriks, 118 Wn.2d at 462-63. A finding of causation and damages is not required to support an order of disgorgement. Id. Disgorgement of fees is a reasonable way to "discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type." In re E. Sugar Antitrust Litig. Pantry Pride, Inc., 697 F.2d 524, 533 (3d Cir. 1982). When an attorney is guilty of fraudulent acts or gross misconduct in violation of a statute or against public policy, the client may have a complete defense to the attorney's action for fees. Dailey v. Testone, 72 Wn.2d 662, 664, 435 P2d 24 (1967). While attorney misconduct can be so egregious as to constitute a complete defense to a claim for fees, not every act of misconduct will justify such a serious penalty. Kelly v. Foster, 62 Wn. App. 150, 156, 813 P.2d 598 (1991). The trial court has discretion in deciding what impact, if any, lawyer misconduct will have on a claim for attorney fees. Id. We review a trial court's

decision to deny disgorgement of fees for abuse of this discretion.  Spencer, 6 Wn. App. 2d at 777.

The request for disgorgement of fees was necessarily dismissed as a result of the grant of summary judgment dismissing all claims.  For purposes of evaluating the disgorgement request, we will accept as true Haglund's evidence that Gribben's representation fell below the standard of care and violated RPC 1.1's duty of competence.  See Keck, 184 Wn.2d at 370.  The nature of the professional errors alleged was failure to meet a filing deadline and failure to notify the client that this mistake created a potential conflict of interest.  The facts do not allege or support a finding of fraudulent acts or gross misconduct in violation of a statute or against public policy.  No record was made relative to the likelihood of repetition of the conduct and the need for deterrence to protect the public.  The loss of the case is clearly attributed by the trial court to Haglund's conduct relative to the transaction at issue and to his lack of credibility in the proceedings.  The record on appeal does not demonstrate any harm to Haglund flowing from Gribben's conduct.  On this record, we cannot hold the trial court abused its discretion in dismissing the requested remedy of disgorgement of fees.

We affirm.

_Appelwick, J._

WE CONCUR:

_Smith, J._                    _Andrus, A.C.J._

20